779 F.2d 272
 19 Fed. R. Evid. Serv. 1594
 Mrs. Loretta G. Krause CURRY, As confirmed natural tutrix of
the minor children, etc., Plaintiffs-Appellants,
v.
CHEVRON, USA, et al., Defendants,
Sikorsky Aircraft, Defendant-Appellee.
Wallace Michael KEMP, Plaintiff-Appellant,
v.
SIKORSKY AIRCRAFT, Defendant-Appellee.
Effie Roy STANSBURY, Personal Representative of the Estate
of Larry R. Stansbury, Plaintiff-Appellant,
v.
SIKORSKY AIRCRAFT, Defendant-Appellee.
 No. 84-3560.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 31, 1985.
 
 Guste, Barnett & Shushan, New Orleans, La., Richard L. Weil, William J. Guste, III, Verne Lawyer, Des Moines, La., for plaintiffs-defendants.
 Theall & Fontana, Gary E. Theall, Abbeville, La., for Stansbury.
 Lloyd C. Melancon, New Orleans, La., for defendants.
 Christovich & Kearney, R.K. Christovich, New Orleans, La., for Sikorsky Aircraft.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before GARZA, TATE and JOHNSON, Circuit Judges.
 GARZA, Circuit Judge.
 
 
 1
 This lawsuit arises out of the crash of a helicopter that was transporting persons to and from various oil rigs located in the Gulf of Mexico. All but two of the men on board perished in the crash. These men both testified at trial that the helicopter had made several routine stops on different platforms dropping off and taking on different passengers. The last stop was at a platform in Block 305B, Eugene Island, where the helicopter was turned off completely while it was refueled. Once refueled, the craft lifted off again, en route to another platform. According to the survivors, five to ten minutes into the flight, they heard a loud snap coming from above and towards the center of the helicopter. Almost immediately, the craft began vibrating violently to the left and right and descending into the Gulf. One of the witnesses estimated their altitude at about fifteen hundred to two thousand feet before the snapping noise occurred. In a matter of moments, the helicopter crashed into the sea, killing almost everyone on board.
 
 
 2
 The two survivors, Wallace M. Kemp ("Kemp") and Charles W. Treadway ("Treadway") filed suit in the United States District Court for the Eastern District of Louisiana. The heirs of James D. Krause ("Krause") also sued in the Eastern District. The heirs of Larry S. Stansbury ("Stansbury") filed suit in the United States District Court for the Western District of Louisiana.
 
 
 3
 The heirs of James D. Krause sued Chevron U.S.A., Inc. ("Chevron"), the owner and operator of the helicopter; Sikorsky Aircraft ("Sikorsky"), the original manufacturer of the helicopter; Chicago Helicopter Airways, the manufacturer of the helicopter; and Land & Marine Applicators, Krause's employer. Charles W. Treadway claimed damages against Chicago Helicopter Airways, Sikorsky Aircraft and his employer, Land & Marine Applicators, Inc. Michael Kemp, a Chevron employee, claimed damages against Chicago Helicopter Airways and Sikorsky.
 
 
 4
 As stated above, the heirs of Stansbury originally filed suit in the Western District of Louisiana against Chevron (Stansbury's employer) and Sikorsky. Stansbury sought relief under the Death on the High Seas Act, the Jones Act, and general maritime law. The district court granted a motion for summary judgment on behalf of Chevron on the grounds that Stansbury was not a Jones Act seaman and that the Longshoremen and Harbor Worker's Compensation Act provided Stansbury's exclusive remedy against Chevron. We affirmed this ruling in Stansbury v. Sikorsky Aircraft, 681 F.2d 948 (5th Cir.1982). Stansbury's claims against Sikorsky were transferred to the United States District Court for the Eastern District of Louisiana for consolidation with the other cases pending there. Sikorsky then moved for a partial summary judgment declaring that the Death on the High Seas Act, 46 U.S.C. Secs. 761-768 (DOHSA) provided Stansbury's exclusive remedy against Sikorsky. The district court agreed.[1]
 
 
 5
 After disposition of many claims by voluntary dismissal or motions for partial summary judgment, Sikorsky remained as the only defendant in this case. The district court ordered a bifurcated trial and on July 30, 1984, the trial on the issue of liability began. The trial was also bifurcated in the sense that only the claims of the two survivors, Kemp & Treadway, were being tried to a jury under the court's diversity jurisdiction. The DOHSA claims of the decedents, Krause and Stansbury, were being tried in admiralty to the district court judge. At the close of plaintiffs' evidence, Sikorsky moved for a directed verdict as to Kemp and Treadway and for an involuntary dismissal as to Krause and Stansbury. The district court granted Sikorsky's motions and entered judgment accordingly. This appeal followed.[2]
 
 
 6
 On appeal, the appellants make the following arguments: (1) that the district court erred in granting Sikorsky's motion for directed verdict and motion for involuntary dismissal, (2) that the district court erred in ruling that DOHSA was Stansbury's exclusive remedy thereby depriving him of a trial by jury and the right to supplement his DOHSA claim with claims made under state wrongful death law, (3) that the district court erred in denying plaintiffs admission of the National Transportation Safety Board ("NTSB") probable cause report into evidence, and (4) that the district court erred in failing to apply the doctrine of res ipsa loquitur to Sikorsky.
 
 
 7
 We begin our discussion by preliminarily disposing of two minor points raised on appeal but which have no effect on the disposition of this case.
 
 I. THE NTSB PROBABLE CAUSE REPORT
 
 8
 During the course of the trial, counsel for Krause and Kemp attempted to have their expert witness testify that he had relied on the probable cause conclusions of the NTSB report in reaching his opinion about the cause of the crash. The report concluded that the probable cause of this crash was the failure of a main rotor blade. The district court allowed plaintiffs' expert to base his conclusions on data included in the report, but forbade his use of the report's opinions and conclusions.
 
 
 9
 Plaintiffs contend that under Fed.R.Evid. 703[3] the expert witness should have been allowed to testify that the NTSB report was one of the sources he relied on in reaching his opinion. But Congress has determined that these reports shall not be used as evidence at trial,[4] and the judicial gloss on Sec. 701(e), while allowing factual portions of the report to be admitted, forbids the use of any conclusory statements in the NTSB reports. Travelers Insurance Co. v. Riggs, 671 F.2d 810, 816 (4th Cir.1982); American Airlines, Inc. v. United States, 418 F.2d 180, 196 (5th Cir.1969).
 
 
 10
 Appellants also contend that counsel for Sikorsky "opened the door" to the admission of this report by a reference he made to it in opening argument. We disagree that this reference to the report, even if it was wrongfully made, overrides the statutory mandate against use of the report's conclusions.
 
 II. RES IPSA LOQUITUR
 
 11
 Stansbury contends that the doctrine of res ipsa loquitur should be applied to Sikorsky. We disagree and affirm the district court on this ruling.
 
 
 12
 Res ipsa loquitur is a rule of circumstantial evidence used in negligence actions. Bourdeaux v. American Insurance Co., 262 La. 721, 264 So.2d 621, 628, modified on reh'g, 264 So.2d 634 (1972). In Bourdeaux, the Louisiana Supreme Court reiterated that in civil cases, the plaintiff's proof, based on either direct or circumstantial evidence, "is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." 264 So.2d at 635 (quoting Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155 (1971)). In regard to the doctrine of res ipsa, where a plaintiff seeks to carry his burden of proof by the use of circumstantial evidence, negligence of the defendant may be inferred "because the facts indicate this to be the more probable cause of injury in the absence of other as-plausible explanation by witnesses found credible." 264 So.2d at 636 (italics in original). Put another way, "Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident?" Id. (quoting Pilie v. National Food Store, 245 La. 276, 158 So.2d 162, 165 (1963) (italics supplied in Bourdeaux )).
 
 
 13
 We are hard pressed to discern how the use of res ipsa can help the plaintiffs when they are struggling even under a strict liability theory, which is much less onerous to prove, to make their case. With res ipsa, plaintiffs must prove that Sikorsky negligently manufactured the helicopter blade and that such negligence was the proximate cause of plaintiffs' injury. With strict liability, plaintiffs need only prove that the blade was dangerously defective, regardless of Sikorsky's negligence in the manufacture of the blade.
 
 
 14
 We affirm the district court's ruling on the submission of a res ipsa issue to the jury. We do not find that the district court was clearly erroneous in determining that negligence of the defendant in the manufacture of the helicopter blade was not the most plausible explanation of the accident. For example, the record indicates that five or six days before the accident, Chevron, the owner-operator of the helicopter, had replaced one of the rotor blades, which may have been done improperly. Or, as other testimony indicates, the blade could have been damaged during shipping or storage, after it was out Sikorsky's control. We note that the record contains conflicting evidence of varying weight and probativeness on these and other points. We, of course, express no opinion about the cause of the accident. But we do not find that the district court clearly erred in refusing to apply this doctrine to Sikorsky.
 
 III. REVIEW OF THE FINDINGS OF FACT
 
 15
 The procedural posture of this case places us in novel position of reviewing the district court's factual findings under two distinct standards of review. As noted above, the two survivors of the crash sued under diversity jurisdiction and had their claims tried to a jury, whereas the heirs of two of the decedents had their actions tried to the district judge in admiralty under DOHSA.
 
 A. The Motion for Directed Verdict
 
 16
 The standard for determining the propriety of a directed verdict was set out in Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc):
 
 
 17
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
 
 
 18
 Id. at 374-75. We have reviewed the evidence and find that this issue should have gone to the jury. There is substantial evidence in the record, which looked at in the light and with all reasonable inferences most favorable to the party opposed to the motion, leads us to conclude that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions.
 
 B. The Involuntary Dismissal
 
 19
 The standard of review for the district court's factual basis for involuntary dismissal of the DOHSA claims is whether the finding was clearly erroneous. Fed.R.Civ.Pro. 52(a). Although we can say with certainty that the district court erred in granting the motion for directed verdict as to plaintiffs Kemp and Treadway, we cannot say that the district court's factual findings are clearly erroneous as to the claims of the two decedents, Krause and Stansbury.
 
 IV. THE EXCLUSIVITY OF THE DOHSA CLAIMS
 
 20
 Our reversal of the directed verdict and affirmance of the involuntary dismissal does not, however, end the disposition of this case. Stansbury's heirs argue that the district court erred in ruling that their only causes of action were those granted by DOHSA. We are compelled to agree.
 
 
 21
 In Tallentire v. Offshore Logistics, 754 F.2d 1274 (5th Cir.), cert. granted, --- U.S. ----, 106 S.Ct. 60, 88 L.Ed.2d 48 (1985), we held that DOHSA was not an exclusive remedy for the representatives of deceased offshore workers and that a federal court could, under either its diversity or its pendent jurisdiction, decide the state law wrongful death claim brought in conjunction with the DOHSA claim. See generally id. We also recognized that a plaintiff, otherwise entitled to a trial by jury on state law claims even though the federal cause of action was within the court's admiralty jurisdiction, could have the entire case tried to a jury. Id. at 1287; Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Although Tallentire put us in direct conflict with the Ninth Circuit on this issue, Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983), we are bound by our Fifth Circuit ruling in Tallentire. We note that the United States Supreme Court has granted certiorari in Tallentire, presumably on the issue of whether DOHSA preempts state law remedies. Nonetheless, until decision is forthcoming, Tallentine provides the rule of decision for this case.[5] We are compelled to reverse and remand for further proceedings consistent with this opinion.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 [1]
 DOHSA actions are brought in admiralty and as such no trial by jury may be had. 46 U.S.C. Sec. 761
 
 
 [2]
 Treadway did not appeal from the adverse judgment
 
 
 [3]
 Rule 703 of the Federal Rules of Evidence provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissable in evidence.
 
 
 [4]
 49 U.S.C. Sec. 1441(e) provides:
 No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.
 
 
 [5]
 The author of this opinion dissented in Tallentire, supra, and would agree with the district court in this case that DOHSA preempts state law and provides an exclusive remedy. Since, however, the United States Supreme Court has granted certiorari in Tallentire, and the possibility exists that Tallentire might be reversed, the district court may want to stay proceedings until this issue is finally resolved