**CHIRON CORPORATION AND PERSEPTIVE BIOSYSTEMS, INC., Petitioners,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD, et al., Respondents.**

No. 98–1558.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1999.

Decided Dec. 21, 1999.

Jerry W. Cox argued the cause for petitioners. With him on the briefs were Richard S. Odom and Martin Shulman.

Peter R. Maier, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Leonard Schaitman, Attorney, and Wilma A. Lewis, U.S. Attorney. Mark E. Nagle, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

EDWARDS, Chief Judge:

The National Transportation Safety Board ("NTSB" or "Board") is an independent federal agency charged with investigating airplane accidents. The agency does not function as a traditional regulatory or adjudicatory body; rather, its principal missions are to determine the probable cause of accidents and make recommendations that will help prevent future accidents. Private parties who are involved in an accident (other than just as victims) may be designated to participate in an NTSB investigation, but their involvement is voluntary and it does not include an adjudication of individual claims.

In the instant case, petitioners, Chiron Corporation ("Chiron") and PerSeptive Biosystems, Inc. ("PerSeptive"), participated as parties in an NTSB investigation of an accident involving Federal Express Flight 1406. Concerned that they might be found responsible for the accident and eventually face claims of liability in a civil suit, petitioners asked NTSB for a copy of the cargo list for Flight 1406. The Board

refused to disclose the cargo list, in part because Federal Express viewed the data as privileged, business information. Petitioners then filed this law suit, claiming injury from NTSB's refusal to release the requested information and seeking an order requiring its production. We dismiss the petition for review, because petitioners lack standing.

Petitioners first argue that NTSB's denial of information injures them, because it may disadvantage them as defendants in a civil suit that Federal Express has filed against them. However, any possible injury to petitioners as defendants in a civil law suit is not legally cognizable here, because it is not an injury that petitioners will suffer as a consequence of their participation in the NTSB investigation. In other words, in order to have standing to bring this law suit, petitioners must have suffered an injury related to their involvement as parties to the NTSB investigation. They cannot show this.

Furthermore, there is little likelihood that petitioners will suffer any injury of the sort that they claim. Petitioners are concerned that NTSB's report may be admitted as evidence in a lawsuit that Federal Express has filed against them. They hope that the information they seek will reveal new evidence that they can use to convince NTSB to change its report so that it will not adversely affect them in the pending lawsuit. This is an idle concern, for Congress has made it clear that NTSB reports, including probable cause determinations, are not admissible as evidence in a civil lawsuit. Thus, the Board's report will not control the results in any civil litigation over Flight 1406.

Petitioners also argue that, as parties to the investigation, they have a legal right to the plane's cargo information. Petitioners contend that such a right may be found in the Board's regulations and in a written Guidance given to them as parties to the investigation. Thus, according to petitioners, NTSB's denial of their request for the cargo list caused them an informational

injury. This claim fails, however, because there is no statute, regulation, or any other source of law that secures for parties to an NTSB investigation unfettered access to all information garnered by the Board. In short, petitioners have no legal basis for the alleged rights that they seek to enforce.

Because petitioners lack standing to bring this suit, their petition for review is dismissed.

## I. BACKGROUND

### A. NTSB Investigations

NTSB is a uniquely independent federal agency responsible for investigating airplane accidents, determining the probable cause of accidents, and making recommendations to help protect against future accidents. *See* 49 U.S.C. §§ 1131, 1132, 1135 (1994). NTSB neither promulgates nor enforces any air safety regulations. Nor does the agency adjudicate claims over liability for accidents. Rather, it simply analyzes accidents and recommends ways to prevent similar accidents in the future.

Congress has endowed NTSB with broad powers to accomplish its missions, because the work of the agency is viewed as extremely important. *See* S.REP. No. 101–450, at 2 (1990), U.S. Code Cong. & Admin. News at 6376, 6377 ("The NTSB's mission ... is critical."). An officer or employee of the Board can enter a site where an accident has occurred and "do anything necessary to conduct an investigation." 49 U.S.C. § 1134(a)(1) (1994). The Board may inspect and test any aircraft, aircraft engine, or property on an aircraft that has been involved in an accident, and the Board has sole discretion to determine how those tests are to be conducted. *See* 49 U.S.C. § 1134(b), (d) (1994). Most importantly, the Board's investigations have "priority over any investigation by another department, agency, or instrumentality of the United States Government." 49 U.S.C. § 1131(a)(2) (1994). The Board has used these broad powers

wisely, achieving notable successes in its work and receiving high praise for the integrity of its investigative processes. *See* S. REP. No. 104–324, at 2 (1996), U.S. Code Cong. & Admin. News at 3925, 3926 ("The Safety Board's reputation for impartiality and thoroughness has enabled it to achieve such success in shaping transportation safety improvements that more than 80 percent of its recommendations have been implemented.").

Although NTSB investigations are conducted by agency staff, outside individuals may be designated to participate as well. Only the Federal Aviation Administration ("FAA") has a right to participate in an investigation; however, the Board's regulations allow the individual in charge of an investigation to designate private parties to participate if their involvement would assist the investigation. *See* 49 C.F.R. § 831.11 (1998). The regulations specify that "parties shall be limited to those persons, government agencies, companies, and associations whose employees, functions, activities, or products were involved in the accident or incident." *Id.*

It is often the case that corporations or individuals suspected of causing an accident will be invited to participate in an investigation, whereas victims of the accident will not. The rationale for this approach is that parties who may have caused an accident will provide investigators with valuable information; they may also learn how to improve the safety of their products or activities to avoid future accidents. The same cannot be said of accident victims. *See* John W. Simpson, *Use of Aircraft Accident Investigation Information in Actions for Damages,* 17 J. Air L. & Com. 283, 290 (1950) ("[R]epresentatives of industry and employee groups are often permitted to participate in the investigation and thus have access to much information, while the representatives of the victims seldom participate in the investigation. These procedures are absolutely necessary in order to determine the probable cause of an accident.").

Moreover, an NTSB investigation is a "fact-finding proceeding[ ] with no formal issues and no adverse parties. [It is] . . . not conducted for the purpose of determining the rights or liabilities of any person." 49 C.F.R. § 831.4 (1998). Board regulations and policies are explicit in providing that parties participating in an investigation are involved in NTSB processes only to assist the safety mission and not to prepare for litigation. Parties are required to sign a "Statement of Party Representatives to NTSB Investigation," which requires them to agree that their "participation is not for the purposes of preparing for litigation," but, rather, "for the purpose of providing technical assistance to the [NTSB]." Statement of Party Representatives to NTSB Investigators *reprinted in* 1 Deferred Appendix, at 435; *see also* 49 C.F.R. § 831.11(b) (requiring parties to sign the "Statement of Party Representatives to NTSB Investigation" in order to participate in the investigation).

Parties assist the investigation in a variety of ways. *See* "Information for the Guidance of Parties to Safety Board Investigations of Accidents" ("Guidance"), *reprinted in* Br. for Respondents at 1c; *see also* "Guidance for Party Coordinators and Other Participants in the Investigation of Aircraft Accidents," 2 National Transportation Safety Board Aviation Investigation Manual, app. D (containing much of the same information). They provide information about their products or activities. They may also join various groups organized for the investigation, such as a group organized to investigate hazardous materials. They report to the investigator in charge, who, in turn, provides the groups and parties with information about any developments in the investigation. These groups may then write a report at the end of the investigation detailing their findings and suggestions. Parties may also submit their own report at the end of the investigation suggesting the probable cause of the accident.

In addition to the reports submitted by the investigation groups and the parties, NTSB investigators also prepare factual accident reports that are submitted to the Board. Public hearings are sometimes held. From this information, the Board compiles and publishes a final accident report that contains factual findings, a probable cause finding, and safety recommendations.

### B. The Investigation of Flight 1406

On September 5, 1996, Federal Express Flight 1406's cargo caught fire. Unable to control it, the crew made an emergency landing, but smoke and fire destroyed the plane and most of its cargo. NTSB immediately began an investigation, which quickly focused on a DNA synthesizer as the possible source of the fire's ignition. Chiron, who owns the synthesizer, and PerSeptive, who manufactures it, were invited to participate in the investigation. Both Chiron and PerSeptive were actively involved in the investigation, but neither was happy with its progress.

Chiron and PerSeptive have maintained that something other than the DNA synthesizer may have started the fire on Flight 1406. When they were unable to convince NTSB investigators to focus on other possibilities, Chiron and PerSeptive resolved to explore these possibilities on their own. To that end, they sought to discover what else Federal Express was carrying on Flight 1406. NTSB, however, refused to disclose the cargo list. Chiron and PerSeptive then filed formal petitions requesting the cargo information. Their petitions were denied. The Board explained that party status did not grant parties a right to information and that it was withholding the information because Federal Express considered the information to be a trade secret. *See* Letter from Daniel D. Campbell, General Counsel, National Transportation Safety Board, to Jay E. Grover, Director, Environmental Health and Safety, Chiron Corp. (Oct. 31, 1997), *reprinted in* Respondent's Appendix at 139–40; Letter from Daniel D. Campbell, General Counsel, National Transportation Safety Board, to Jerry W. Cox (May 4, 1998), *reprinted in* Respondent's Appendix at 151. This petition for review followed.

### II. ANALYSIS

■ The first and, as it turns out here, only issue before the court is a question of standing. If, as we hold, petitioners lack standing, then this court is without jurisdiction to decide the merits of their claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In order to establish their standing, petitioners must show that they have suffered a particularized injury to a cognizable interest, which is fairly traceable to the Board's actions, and that a favorable judicial decision will redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The problem facing petitioners in this case is that they have suffered no injury.

Petitioners argue that they are injured in two ways by the Board's refusal to give them a copy of the cargo list. First, they argue that the denial of information injures them, because they need the information to correct the Board's faulty report, which may be used against them in a civil suit. Second, they contend that they have suffered an informational injury, because, they claim, they have a legal right to obtain the cargo list. These arguments are meritless.

### A. Injury By Virtue of Civil Litigation

■ Petitioners apparently are afraid that the factual portion of NTSB's report may be admitted as evidence in a lawsuit that Federal Express has filed against them. *See* Joint Br. for Petitioners at 21 ("[S]ome day a judge and/or a jury may be asked to rely on supposedly 'factual' evidence from an NTSB investigation that did not include all pertinent material."). Petitioners object to the report as written, and

they hope that the information they seek will reveal new evidence that they can employ to convince the NTSB to change its report so that it will not be so damaging to them in the pending lawsuit. This alleged injury is not cognizable, because petitioners bring this petition for review as parties to an NTSB investigation, and, as parties, they cannot claim injuries that they might suffer as defendants in an entirely separate civil lawsuit.

■ As an initial matter, we reject the premise that NTSB's report itself is admissible in a civil lawsuit. Congress has quite explicitly provided that,

[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report.

49 U.S.C. § 1154(b) (1994). The simple truth here is that NTSB investigatory procedures are not designed to facilitate litigation, and Congress has made it clear that the Board and its reports should not be used to the advantage or disadvantage of any party in a civil lawsuit. In our view, this congressional mandate could not be clearer.

Petitioners point out that, despite the statute's clear language, some early circuit court opinions held that NTSB "factual findings" were admissible in civil litigation. Joint Br. for Petitioners at 20 (citing authority). A careful review of these opinions, however, shows that these early cases actually focused only on the admissibility of *investigators'* reports which were mislabeled by the courts as "report[s] of the Board." *See, e.g., American Airlines, Inc. v. United States,* 418 F.2d 180, 196 (5th Cir.1969) (allowing admission of graphs that were based on information from a safety committee's report); *Berguido v. Eastern Air Lines, Inc.,* 317 F.2d 628, 631–32 (3d Cir.1963) (allowing testimony of witness based on investigator's report); *Lobel v. American Airlines,* 192 F.2d 217, 220 (2d Cir.1951) (allowing admission of an

investigator's report of his examination of the plane wreckage). Because of this judicial mislabeling, these circuits created what they supposed was an "exception" to § 1154(b) for factual data from NTSB investigations in order to protect the interests of alleged victims. *See, e.g., Berguido,* 317 F.2d at 631–32 (finding testimony based on an investigator's report admissible, despite the statute, because of the need to "compromise between the interests of those who would adopt a policy of absolute privilege ... and the countervailing policy of making available all accident information to litigants in a civil suit"). In short, the need to insure that victims had access to investigators' factual data surrounding an accident prompted the courts in the early years to allow admission of what they labeled as a "report of the Board."

When faced with the judiciary's literal distortion of the statute, the Board, in 1975, responded by amending its regulations to make clear that investigators' reports—the very reports that some courts were already admitting—are not "reports of the Board" for the purpose of § 1154(b). Section 835.2 defines the Board's accident report as "the report containing the Board's determinations, including the probable cause of an accident." 49 C.F.R. § 835.2 (1998). No part of this report "may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." *Id.* (using almost the exact language of 49 U.S.C. § 1154(b)). A "factual accident report," on the other hand, is "an investigator's report of his investigation of the accident." *Id.* Because this report is not a "report of the Board," it is not barred by the statute and is therefore admissible. As counsel for NTSB made clear during oral argument, the only reports that are admissible "are the factual reports that investigators do, not the Board's findings, either factual or probable cause, but what individual investigators find.... [T]hose reports of these factual developments are

made part of the record and parties can get that." Audio-tape of Oral Arguments (Nov. 15, 1999). Thus, because investigators' reports are now plainly admissible under agency regulations, victims have access to necessary factual information. Therefore, courts no longer need to employ an "exception" to the statute to protect parties in litigation.

Our research indicates that, since the promulgation of the Board's 1975 rule, only two circuit court opinions have failed to recognize that the admissibility of investigators' reports obviates the need for a judicial exception to the statute. See Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 848 (10th Cir.1986) ("[E]xpert witness properly relied on the factual portions of the NTSB report."); Curry v. Chevron, USA 779 F.2d 272, 274 (5th Cir.1985) (acknowledging judicial gloss of the statute "that allow[s] factual portions of the report to be admitted"). In each case, the courts distinguished between the "factual portions" of Board reports and "parts of NTSB reports which contain agency conclusions on the probable cause of accidents." Mullan, 797 F.2d at 848. However, neither opinion is weighty authority, even for the limited rule enunciated, because there are later decisions from both circuits that adhere to the strict terms of the statute. Subsequent to Mullan, the Tenth Circuit has held that, "[c]onsistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court." Thomas Brooks v. Burnett, 920 F.2d 634, 639 (10th Cir.1990); accord Jetcraft Corp. v. Flight Safety Int'l, 16 F.3d 362, 366 (10th Cir.1993). And even more recently, in 1998, the Fifth Circuit has noted that:

Federal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB.

Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1001 (5th Cir.1998).

We agree with these recent decisions from the Fifth and Tenth Circuits, and also a decision from the Ninth Circuit, see Benna v. Reeder Flying Serv., Inc., 578 F.2d 269, 271 (9th Cir.1978), holding that, under the plain terms of the statute, NTSB reports are inadmissible in civil litigation. When the statute was interpreted broadly to include investigators' reports, there may have been a public policy justification for admitting factual information. However, once the statute was interpreted more narrowly, no justification remained for any exception to § 1154(b).

Moreover, as this case demonstrates, admitting Board reports into civil litigation can have the unsavory affect of embroiling NTSB in the interests of civil litigants. Thus, the statute means what it says: No part of the Board's actual report is admissible as evidence in a civil suit. See Universal Airline, Inc. v. Eastern Air Lines, Inc., 188 F.2d 993, 1000 (D.C.Cir.1951) (noting that the Board should not be compelled to produce its reports). Because it is the Board's actual report that petitioners hope to change, they are not injured by their inability to change it, because it is not admissible in a civil suit.

Even if the report were admissible, however, petitioners' injury as civil litigants is simply not cognizable in this case. Petitioners bring this suit as parties to an NTSB investigation. As parties, they signed a statement agreeing that their participation would be for the purpose of assisting NTSB's investigation and would not be for the purpose of preparing for litigation. See Statement of Party Representatives to NTSB Investigation, reprinted in 1 Deferred Appendix at 435. Furthermore, NTSB's investigations are fact-finding proceedings; they are not conducted for the purpose of determining the rights or liabilities of any party. Therefore, the injuries petitioners might suffer as civil defendants are not relevant to their status as parties. Accordingly, because petitioners bring this suit as parties to an NTSB investigation, their injuries as civil

litigants are not legally cognizable. Whatever data they may require in litigation, apart from the Board's report, may be obtained through the normal course of discovery.

## B. Informational Injury

█ Petitioners also argue that NTSB's denial of information has caused them an informational injury. . Petitioners rely principally on *Cummock v. Gore,* 180 F.3d 282 (D.C.Cir.1999), which held that, as a member of a committee regulated by the Federal Advisory Committee Act ("FACA"), Cummock had a right of participation that created a right to information, and that "she suffered an injury under FACA insofar as the Commission denied her requests for information that it was required to produce." 180 F.3d at 290. Petitioners argue that, "as parties to an NTSB investigation," they have "judicially-enforceable *Cummock* rights" that entitle them to the information they seek. Joint Br. for Petitioners at 26. Petitioners' argument fails, however, because, unlike FACA, nothing in NTSB's statute, regulations, or other sources of law requires NTSB to produce this information to petitioners. Therefore, the denial of information does not give rise to an informational injury.

Unlike FACA, NTSB's organic statute does not grant parties to an NTSB investigation rights of participation. FACA provides that federal advisory committees are "to be fairly balanced" and structured to insure that the advice of the committee reflects its "independent judgment." 5 U.S.C.A. app. 2 § 5(b)(2) (1996); *id.* at § (b)(3). In *Cummock,* this court held that, "to give meaning to FACA's fair balance and independent judgment provisions, the Act must be read to confer on a committee member the right to fully participate in the work of the committee to which he or she is appointed." *Id.* at 291. The right of participation, the court held, endowed committee members with a right to information. *See id.* at 292. NTSB's

statute does not confer any such rights on a party to an investigation. Congress, quite simply, provided that "[t]he National Transportation Safety Board shall investigate or have investigated (in detail the Board prescribes) and establish the facts, circumstances, and cause or probable cause of—(A) an aircraft accident...." 49 U.S.C. § 1131(a)(1). The statute does not require the investigation either to be balanced or even to involve any outside persons; it places the responsibility of investigating the accident solely within NTSB's hands. Thus, nothing in the statute gives petitioners the *Cummock* rights of participation and information that they seek to enforce.

In addition, there is legislative history showing that Congress did not want the interests of private parties to constrain an NTSB investigation. The Senate Committee on Commerce, Science, and Transportation noted that "[c]ourts typically have recognized and appreciated the important public purpose served by the NTSB's ability to conduct prompt investigations without the burdens and interference that would stem from injecting the civil litigation interests into the NTSB's accident investigation process." S.Rep. No. 101–450, at 5, 1990 U.S. Code Cong. & Admin. News at 6380. The Committee continued, adding that

> [t]he time devoted by NTSB investigations in defending their decisions diverts the energies that they should be directing to investigating the accidents.... [T]he committee strongly believes that the ability of the NTSB to conduct investigations independently, thoroughly, and in a timely manner for the benefit of the public, should not be compromised.

*Id.* Equipping parties with a *right* to information would "inject[ ] the civil litigation interests into the NTSB investigation process" and compromise the investigation, a prospect against which Congress admonished. Thus, not only does the statute fail to endow parties with a right to informa-

tion, legislative history admonishes against reading such a right into the statute.

Neither can the right be found, as petitioners argue, in either NTSB's regulations or a Guidance that NTSB gave petitioners as parties to the investigation. Nothing in the regulations speaks to the rights petitioners seek to enforce, and the Guidance is not a source of law enforceable against NTSB. Petitioners point to a handful of regulations that they argue create a right to information, but they are grabbing at straws. 49 C.F.R. § 831.11(a), which states that NTSB shall only appoint parties who "can provide suitable qualified technical personnel actively to assist in the investigation," does not, as petitioners argue, require NTSB to provide parties with all the facts of an investigation. Rather, the regulation speaks only to qualifications necessary to become a party: The corporation or individual must provide someone who has the time and expertise to assist the investigation. Likewise, § 831.11(a)(4), which provides that the FAA and other qualified entities will have "the same rights and privileges ... as other parties" does not itself provide rights to any party. Finally, § 831.14(a) cannot, as petitioners argue, endow parties with any rights, because it merely says that "[a]ny person ... may submit to the Board written proposed findings to be drawn from the evidence produced during the course of the investigation." 49 C.F.R. § 831.14(a) (1998) (emphasis added).

■ Petitioners' most noteworthy argument rests on part four of the NTSB Guidance that is given to all parties to an investigation. The Guidance says that "[a]ll factual information and developments of the investigation that are made known to the [Investigator in Charge] will be passed to each party spokesman." Guidance, *reprinted in* Br. for Respondents at 2c. Petitioners maintain that, pursuant to this statement in the agency's Guidance, they have a legal right to information. Petitioners' problem, however, is that the Guidance does not establish a binding legal norm.

Petitioners argue that the Guidance is binding on the Board, because it is incorporated into the Board's regulations. Petitioners' attempt to demonstrate this incorporation at oral argument was, as they acknowledged, convoluted. Counsel argued that § 831.11(b) requires parties to sign a "Statement of Party Representatives to NTSB Investigation," and the Statement then connects to the Guidance, which contains the sentence endowing them with a right to the information. In their brief, petitioners simplified the route and argued instead that the Party Statement itself "spells out Petitioners' rights and the procedures NTSB would follow, and promised Petitioners full participation and sharing in all pertinent factual developments and deliberations." Joint Br. for Petitioners at 11. Both versions are wrong.

■ The Party Statement gives petitioners no rights. It is a one-page document that discusses their duties as parties and requires them to waive their right to assert privilege in litigation with respect to information or documents obtained during the course of the investigation. It does not discuss their rights as parties, let alone "promise[ ] Petitioners full participation and sharing in all pertinent factual developments." It entitles petitioners to nothing. Neither does the Party Statement incorporate the Guidance. The Party Statement makes no reference—either explicitly or implicitly—to the Guidance. Thus, there is no link between the Board's regulations and the Guidance.

■ Without that link, the Guidance is not a source of law; rather it is exactly what it appears to be, a hand-out that gives information, not rights, to parties in an NTSB investigation. While some unpublished agency pronouncements can be binding, not every "piece of paper emanating from a Department or Independent Agency is a regulation." *Piccone v. Unit-*

*ed States,* 186 Ct.Cl. 752, 407 F.2d 866, 877 (Ct.Cl.1969) (Nichols, J., concurring). The general test is whether the agency intended to bind itself with the pronouncement. *See Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987). Agency intent is "ascertained by an examination of the provision's language, its context, and any available extrinsic evidence." *Doe v. Hampton,* 566 F.2d 265, 281 (D.C.Cir.1977). Here, petitioners make no showing, and we can find none, that NTSB intended the Guidance to be binding.

NTSB certainly never has stated an intention to be bound by the Guidance. *See Service v. Dulles,* 354 U.S. 363, 373–74, 377–82, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (finding departmental regulations to be binding where the agency explicitly adopted the regulations to bind its discretion). Indeed, we cannot imagine why NTSB would ever limit its ability to collect and digest information as it sees fit. The agency is not in the business of facilitating private investigations by private parties, so it would make no sense for NTSB to bind itself to serve as a repository of information for private parties who are angling to protect their interests in litigation. The Guidance simply indicates that, during an investigation, parties may share in some information gathered by the Board; however, the Guidance guarantees nothing.

■ Manuals or procedures may be binding on an agency when they affect individuals' rights. *See Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (holding that an agency is bound by procedures in its manual where an individual's entitlement to government benefits was affected by procedures); *Massachusetts Fair Share v. Law Enforcement Assistance Admin.,* 758 F.2d 708, 711 (D.C.Cir.1985) (holding that an agency is bound by regulations in its manual delineating procedures for grant-funding). *But see Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (declining to find internal rules set forth in a handbook binding where

relief would have been inconsistent with a published regulation). Because an NTSB investigation does not itself determine the rights of the parties, *see* 49 C.F.R. § 831.4 ("Accident/incident investigations are fact-finding proceedings.... [They] are not conducted for the purpose of determining the rights or liabilities of any person."), however, the Guidance cannot be viewed as a binding rule on these terms.

In sum, because NTSB has never indicated an intention to be bound by the Guidance and because the investigation does not affect petitioners' rights, the Guidance does not endow petitioners with any rights to seek the information at issue. Accordingly, they have not suffered any informational injury.

### III. CONCLUSION

Petitioners cannot demonstrate that NTSB's denial of the information they seek has injured them. Without injury, petitioners have no standing to bring this suit. Therefore, the petition for review is dismissed.