# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-461

HAYWARD ALLEN, III

VERSUS

PHI, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20108214
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Timothy J. Young
Jason C. MacFetters
Tammy D. Harris
Megan C. Misko
The Young Firm
400 Poydras Street, Suite 2090
New Orleans, LA 70130
(504) 680-4100
COUNSEL FOR PLAINTIFF/APPELLANT:
   Hayward Allen, III

**Mark A. Lowe**
**Liskow & Lewis**
**P.O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Shell Exploration and Production Company**

**Randall K. Theunissen**
**Allen & Gooch**
**2000 Kaliste Saloom Road, Suite 400**
**Lafayette, LA 70508**
**(337) 291-1240**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **PHI, Inc.**

**Steven D. Sanfelippo**
**Ross Cunningham**
**Cunningham Swaim, LLP**
**7557 Rambler Road, Suite 440**
**Dallas, TX 75231**
**(214) 646-1495**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **PHI, Inc.**

**GREMILLION, Judge.**

The plaintiff, Hayward Allen, III, appeals the trial court's judgment granting a directed verdict in favor of the defendant, PHI, Inc. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

PHI owns a fleet of helicopters that transport offshore workers to their rigs. On December 24, 2009, one of PHI's helicopters landed on the helipad of the offshore rig where Allen was working. After landing, the helicopter rolled over. The five passengers and two crew members quickly exited the helicopter and none were injured.

Allen was scheduled to return home and was waiting on the platform to board the helicopter. He claims that he can longer work because he is afraid of helicopters since the accident. He claims to have suffered emotional distress including chest pains, sleep problems, anxiety, and elevated blood pressure.

Allen filed suit in December 2010, against Shell Exploration and Production Company (the rig operator) and PHI. Summary judgment was granted in favor of Shell. PHI filed a motion for summary judgment arguing that Allen was never in the zone of danger since he did not see anything; he only heard noises from sixty feet below the level of the helipad, and he was never hit by any flying debris. Thus, PHI argued that it was unreasonable for Allen to fear for his safety. The trial court denied the motion for summary judgment.

PHI filed numerous motions in limine to exclude witness testimony, arguing that Allen failed to list certain expert witnesses by the deadline. The trial court granted PHI's motions in limine at the start of the trial on October 28, 2014. The

trial court granted a directed verdict in favor of PHI, finding that Allen had failed to offer any evidence of liability or negligence of PHI. Allen now appeals.

## ASSIGNMENTS OF ERROR

1. The trial court erred in granting several of PHI, Inc.'s motions in limine to exclude evidence, including excluding the NTSB Factual Report, excluding the written statements of helicopter passengers, and preventing plaintiff from calling Terry Kaufman to testify at trial.

2. The trial court erred in granting Defendant/Appellee's motion for directed verdict.

3. The trial court erred in not granting a continuance of trial after key evidence was excluded on the morning of trial.

## DISCUSSION

### *Excluded Evidence*

Allen argues that the trial court should not have excluded a National Transportation Safety Board (NTSB) report, certain written witness statements, and the testimony of Terry Kaufman. The trial court has vast discretion in determining whether to exclude or allow evidence, and its decisions will not be overturned in the absence of an abuse of discretion. *Bellsouth Telecomms., Inc. v. City of Lafayette*, 05–1478, 05–1505 (La.App. 3 Cir. 1/5/06), 919 So.2d 844.

### *NTSB Report*

Allen argues that the trial court erred in excluding the NTSB report. PHI relied on 49 U.S.C. §1154(b) which states that, "No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." PHI further argued that the report was inadmissible hearsay, and the trial court agreed.

While a plain reading of that statute would suggest that nothing in the NTSB report is admissible, jurisprudence seems to indicate otherwise. Allen relies on *In re Air Crash at Charlotte, North Carolina on July 2, 1994*, 982 F.Supp. 1060 (D.S.C. 1996), which essentially held that factual portions of NTSB reports are admissible, but opinions and conclusions are not. *In re Air Crash at Charlotte* relies on numerous cases for this proposition. There are no Louisiana cases addressing this issue, although one fifth circuit case essentially came to the same conclusion:

> But Congress has determined that these reports shall not be used as evidence at trial, and the judicial gloss on [Fed.R.Evid.] §701(e), while allowing factual portions of the report to be admitted, forbids the use of any conclusory statements in the NTSB reports.

*Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1999) (footnote omitted).

On the other hand, *Chiron Corporation and Perseptive Biosystems, Inc, v. National Transportation Safety Board*, 198 F.3d 935 (D.C. 1999), a case which provides a thorough background of the NTSB's origin, function, and purpose, stated:

> As an initial matter, we reject the premise that NTSB's report itself is admissible in a civil lawsuit. Congress has quite explicitly provided that,
>
> > [n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report.
>
> 49 U.S.C. § 1154(b) (1994). The simple truth here is that NTSB investigatory procedures are not designed to facilitate litigation, and Congress has made it clear that the Board and its reports should not be used to the advantage or disadvantage of any party in a civil lawsuit. In our view, this congressional mandate could not be clearer.
>
> Petitioners point out that, despite the statute's clear language, some early circuit court opinions held that NTSB "factual findings" were admissible in civil litigation. Joint Br. for Petitioners at 20

3

(citing authority). A careful review of these opinions, however, shows that these early cases actually focused only on the admissibility of *investigator* reports which were mislabeled by the courts as "report[s] of the Board." *See, e.g., American Airlines, Inc. v. United States*, 418 F.2d 180, 196 (5th Cir.1969) (allowing admission of graphs that were based on information from a safety committee's report); *Berguido v. Eastern Air Lines, Inc.*, 317 F.2d 628, 631–32 (3d Cir.1963) (allowing testimony of witness based on investigator's report); *Lobel v. American Airlines*, 192 F.2d 217, 220 (2d Cir.1951) (allowing admission of an investigator's report of his examination of the plane wreckage). Because of this judicial mislabeling, these circuits created what they supposed was an "exception" to § 1154(b) for factual data from NTSB investigations in order to protect the interests of alleged victims. See, *e.g., Berguido*, 317 F.2d at 631–32 (finding testimony based on an investigator's report admissible, despite the statute, because of the need to "compromise between the interests of those who would adopt a policy of absolute privilege . . . and the countervailing policy of making available all accident information to litigants in a civil suit"). In short, the need to insure that victims had access to investigators' factual data surrounding an accident prompted the courts in the early years to allow admission of what they labeled as a "report of the Board."

When faced with the judiciary's literal distortion of the statute, the Board, in 1975, responded by amending its regulations to make clear that investigators' reports—the very reports that some courts were already admitting—are not "reports of the Board" for the purpose of § 1154(b). Section 835.2 defines the Board's accident report as "the report containing the Board's determinations, including the probable cause of an accident." 49 C.F.R. § 835.2 (1998). No part of this report "may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." *Id*. (using almost the exact language of 49 U.S.C. § 1154(b)). A "factual accident report," on the other hand, is "an investigator's report of his investigation of the accident." *Id*. Because this report is not a "report of the Board," it is not barred by the statute and is therefore admissible. As counsel for NTSB made clear during oral argument, the only reports that are admissible "are the factual reports that investigators do, not the Board's findings, either factual or probable cause, but what individual investigators find . . . . [T]hose reports of these factual developments are made part of the record and parties can get that." Audio-tape of Oral Arguments (Nov. 15, 1999). Thus, because investigators' reports are now plainly admissible under agency regulations, victims have access to necessary factual information. Therefore, courts no longer need to employ an "exception" to the statute to protect parties in litigation.

Our research indicates that, since the promulgation of the Board's 1975 rule, only two circuit court opinions have failed to

recognize that the admissibility of investigators' reports obviates the need for a judicial exception to the statute. *See Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 848 (10th Cir.1986) ("[E]xpert witness properly relied on the factual portions of the NTSB report."); *Curry v. Chevron, USA* 779 F.2d 272, 274 (5th Cir.1985) (acknowledging judicial gloss of the statute "that allow[s] factual portions of the report to be admitted"). In each case, the courts distinguished between the "factual portions" of Board reports and "parts of NTSB reports which contain agency conclusions on the probable cause of accidents." *Mullan*, 797 F.2d at 848. However, neither opinion is weighty authority, even for the limited rule enunciated, because there are later decisions from both circuits that adhere to the strict terms of the statute. Subsequent to *Mullan*, the Tenth Circuit has held that, "[c]onsistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court." *Thomas Brooks v. Burnett*, 920 F.2d 634, 639 (10th Cir.1990); *accord Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir.1993). And even more recently, in 1998, the Fifth Circuit has noted that:

> Federal law flatly prohibits the NTSB accident report from being admitted into evidence in any suit for damages arising out of accidents investigated by the NTSB.

*Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir.1998).

We agree with these recent decisions from the Fifth and Tenth Circuits, and also a decision from the Ninth Circuit, *see Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271 (9th Cir.1978), holding that, under the plain terms of the statute, NTSB reports are inadmissible in civil litigation. When the statute was interpreted broadly to include investigators' reports, there may have been a public policy justification for admitting factual information. However, once the statute was interpreted more narrowly, no justification remained for any exception to § 1154(b).

Moreover, as this case demonstrates, admitting Board reports into civil litigation can have the unsavory affect of embroiling NTSB in the interests of civil litigants. Thus, the statute means what it says: No part of the Board's actual report is admissible as evidence in a civil suit. *See Universal Airline, Inc. v. Eastern Air Lines, Inc.*, 188 F.2d 993, 1000 (D.C.Cir.1951) (noting that the Board should not be compelled to produce its reports). Because it is the Board's actual report that petitioners hope to change, they are not injured by their inability to change it, because it is not admissible in a civil suit.

*Id.* at 940-41.

5

We find the reasoning of *Chiron* more persuasive. But even if we did not, the issue is whether the portions of the report that Allen sought to admit were "factual portions" or contained conclusory statements. The portion of the report that Allen sought to admit contained a statement that PHI had no special training class for pilots relating to heavy wind conditions. Although this statement may be factual, it certainly would imply to a jury or any lay person that PHI was not living up to its duties. We find this distinguishable from a fact relating to weather conditions at the time, the time the accident occurred, malfunctions of equipment, and the like. This statement would imply that a certain negative conclusion be drawn and would, therefore, be unduly prejudicial to PHI, which is exactly what 49 U.S.C. § 1154(b) seeks to prohibit. Accordingly, we find that the trial court did not err in excluding the NTSB report. Moreover, we agree that the report would be inadmissible hearsay under Louisiana law.

### Written Statements

Allen argues that the trial court erred in excluding certain witness statements, which PHI employee, Terry Kaufman, certified to be true and accurate copies pursuant to PHI's motion for summary judgment. Allen argues that the statements were exceptions to the hearsay rule because they were "present sense impressions" pursuant to La.Code Evid. art. 803(1) which defines a "present sense impression" as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

PHI argues that the statements were hearsay and that neither the business records exception nor the present sense impression exception applied. We agree and find the trial court did not abuse its discretion in excluding the witness statements. Even if the statements had been allowed by the trial court, the error in

6

excluding them would be harmless, because the statements would not have proven any negligence on the part of PHI. The authors of the statements were all on Allen's witness list. Allen could have called any of them to testify, but he did not. Accordingly, this assignment of error is without merit.

*Testimony of Terry Kaufman*

Allen argues that the trial court erred in excluding Kaufman from testifying at trial. Allen's witness list indicated that he may call "any and all PHI, Inc. . . . employees . . . ."[1] Allen identified ten individuals, but Kaufman was not one of them. A week before trial, Allen revised his witness list to identify Kaufman for the first time as a witness to be called at trial.[2] A trial court does not abuse its

---

[1] The witness list stated in part:

> 3. Any and all PHI, Inc., Tetra Technologies, Inc., and/or Shell Exploration and Production Company employees or former employees to testify concerning the facts and circumstances surrounding the accident, plaintiff's job duties, performance and abilities prior to the accident, all facts and circumstances surrounding the procedure being performed at the time of the accident including prior and subsequent performance of the same procedure or a similar procedure, all equipment being used at the time of the accident including any changes to the equipment following the accident, and any other relevant testimony concerning the plaintiff, his accident, and his damages. Such witnesses include but are not limited to:
>
> (1) Harold Turner
> (2) Ronaly Stansbury;
> (3) Derek Johnson;
> (4) Gary Clark;
> (5) Nicholas J. Ennis, Sr.;
> (6) Roy Maxwell;
> (7) Gary M. Cohen, Jr.;
> (8) Robert Launder;
> (9) Mike Tinkes;
> (10) Kenneth White.

[2] This portion of the witness list was added a week before trial:

> 5. Mr. Terry Kaufman
>    PHI, Inc.
>
> Fact witness to provide testimony on flight training and safety regarding PHI, Inc's helicopters, and any other matters relevant to the plaintiff, accident, and plaintiff's damages.

discretion when it excludes witnesses who were not timely disclosed to the opposing party. *Peoples v. Fred's Stores of Tennessee, Inc.*, 09-1270 (La.App. 3 Cir. 6/2/10), 38 So.3d 1209, *writ denied*, 10-1882 (La. 10/29/10), 48 So.3d 1090. The trial court did not abuse its discretion in finding that this late addition of Kaufman as a witness was not fair notice to PHI and would have prejudiced PHI in providing a defense. A party cannot prepare by obtaining witnesses to address what listed witnesses may testify to if the list includes "every employee" of a company. Moreover, Allen had more than three years from the filing of his suit to list Kaufman as a witness. Accordingly, Allen's assignment of error pertaining to the exclusion of the NTSB report, the witness statements, and Kaufman as a witness are without merit.

***Directed Verdict***

In *Guidry v. Beauregard Electric Cooperative, Inc.*, 14-1108, pp. 17-18 (La.App. 3 Cir. 4/8/15), 164 So.3d 266, 279, *writs denied*, 15-900, 15-903 (La. 9/11/15), __ So.3d __, we summarized the standard for reviewing a trial court's grant of a motion for directed verdict.

> In *Melancon v. Lafayette Insurance Co.*, 05–762, p. 12 (La.App. 3 Cir. 3/29/06), 926 So.2d 693, *writs denied*, 06–974, 06–1006 (La.6/16/06), 929 So.2d 1291, 1293, this court noted that while Article 1810 does not establish standards for the grant of a directed verdict, such standards have been jurisprudentially established. These standards were enumerated by this court in *Carter v. Western Kraft Paper Mill*, 94–524, pp. 4–5 (La.App. 3 Cir. 11/2/94), 649 So.2d 541, 544 (citations omitted):
>
> > [A] directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion. The propriety of granting a directed verdict must be evaluated

8

in light of the substantive law underpinning the plaintiff's claims.

Under the foregoing legal principles the question is not whether in our view the plaintiff has proven his case against defendants by a preponderance of the evidence, but rather, whether, upon viewing the evidence submitted, we conclude that reasonable people could not have reached a verdict in favor of the plaintiff against the defendants. . . .

Questions of credibility should not be resolved by a directed verdict. Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Evaluations of credibility play no part in reaching a decision on a motion for directed verdict.

Having reviewed the record, we find no error by the trial court. The trial court set forth the reasoning behind its grant of the directed verdict in its written judgment stating that there was:

(1) no evidence of the make or model of the helicopter;

(2) no evidence of weather parameters in which the helicopter could safely operate;

(3) no evidence that the existing weather conditions exceeded that in which the helicopter could safely operate;

(4) no evidence as to the cause of the helicopter incident;

(5) no evidence that the helicopter incident was weather-related;

(6) no evidence that the helicopter pilot breached the standard of care applicable to a reasonably prudent helicopter pilot operating under the same or similar circumstances;

(7) no expert testimony as to the cause of the helicopter incident;

(8) no expert testimony to establish a breach of the standard of care because flying a helicopter is not within the common knowledge of a layperson; and

9

(9) no expert testimony regarding flying a helicopter, which is also not within the realm of experience of an ordinary prudent person or juror. . . .

After considering the parties' arguments, the law, and the evidence, all of which favor PHI, Inc., the motion for directed verdict is granted on the basis of no evidence of liability or negligence of PHI, Inc. . . .

Allen presented five witnesses at trial. Allen testified giving his version of events and the resulting severe psychological damage he claims resulted from hearing the noises following the helicopter flip. Dr. Cornelius Gorman, who has a doctorate degree in medical social work counseling, testified regarding rehabilitation in terms of future employment abilities of Allen. Allen's wife of seventeen years, Doris, testified. Dr. Richard Richoux, a board-certified psychiatrist, testified that he was of the opinion that Allen has post-traumatic stress disorder because of the December 24, 2009 helicopter incident, and Dr. Randy Rice testified via deposition regarding economic losses sustained by Allen.[3]

We agree with the trial court that Allen has failed to put forth any evidence of PHI's negligence and certainly will not be able to meet his burden of proof at trial. Allen suggests that PHI's negligence should essentially be presumed and that a weather warning that a cold front was coming through would have been enough to prove PHI's negligence. We disagree. Allen utterly failed in showing any negligence on the part of PHI. Moreover, even if Allen could show PHI was negligent, there was no evidence that he would be able to satisfy his burden of proof under the duty/risk analysis that PHI was the legal cause of his injuries. *See* La.Civ.Code art. 2315.6. His own testimony indicates that he did not see the helicopter turn over, any debris or parts flying, and he was never hit by anything.

_____

[3] Dr. Rice's deposition was submitted into evidence because the directed verdict was granted prior to his being called to the stand as a convenience to all parties.

And finally, even if the excluded witness and witness statements were admitted, a directed verdict would still be proper. Allen had more than three years to develop his case and failed to do so, instead only putting on evidence of his alleged injuries.

Allen also argues that the trial court erred in refusing to apply the doctrine of res ipsa loquitur to this case. We find the doctrine of res ipsa loquitur is inapplicable. A party's failure to develop his negligence claim cannot be cured by a claim that res ipsa loquitur should apply. Res ipsa loquitur, "the thing speaks for itself," is only available when there is no direct evidence to prove a party's claim. *Linnear v. Centerpoint Energy Entex/Reliant Energy*, 06-3030, p. 6 (La. 9/5/07), 966 So.2d 36, 41. There was an abundance of direct evidence that could have been obtained to attempt to prove the negligence of PHI. Allen's failure to secure any expert testimony regarding the negligence of PHI cannot be cured by a claim of res ipsa loquitur. Allen argues in brief that:

> A reasonable juror could infer that PHI, Inc. was negligent if it determined that Mr. Allen's injuries, including PTSD, were more likely than not caused by PHI, Inc., that PHI, Inc. had a duty to protect Mr. Allen from such harm, and that his PTSD could not have been caused by another party or reason. It is Plaintiff/Appellant's position that the jury would be reasonable in inferring that a helicopter crash does not occur outside the scope of negligence.

Allen claims that PHI breached its duty to the workers on the platform by creating a hazardous situation. Yet, Allen provided no evidence whatsoever to prove this point and res ipsa loquitur is an insufficient substitute for the testimony and evidence that would have proven the case had Allen attempted to establish any aspect, other than damages, of the duty/risk analysis. Accordingly, this assignment of error is without merit.[4]

---

[4] We note that in Allen's brief, he mentions under this assignment of error that the trial court judge notified the parties shortly before granting the directed verdict that he was a licensed

11

*Continuance*

In *Shiver, d/b/a LABS v. Lafayette City-Parish Consolidated Government*, 14-760, p. 3 (La.App. 3 Cir. 12/10/14), 154 So.3d 789, 791, we set forth the standard of reviewing a trial court's decision not to allow a continuance:

> Continuances may be granted on either peremptory or discretionary grounds. La.Code Civ.P. arts. 1601 and 1602. The peremptory grounds for a continuance are when "the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." La.Code Civ.P. art. 1602. Otherwise, "[a] continuance may be granted in any case if there is good ground therefor." La.Code Civ.P. art. 1601.
>
> The trial court has wide discretion in ruling on a motion for continuance, and absent a clear showing of an abuse of that discretion, the appellate court will not disturb the trial court's ruling on appeal. *Newsome v. Homer Mem. Med. Ctr.*, 10–564 (La.4/9/10), 32 So.3d 800. In deciding whether or not to grant a motion for continuance, the trial court may consider such factors as diligence, good faith, reasonable grounds, fairness to both parties, and the need for the orderly administration of justice. *Ardoin v. Bourgeois*, 04–1663 (La.App. 3 Cir. 11/2/05), 916 So.2d 329. The defendant's right to have his case heard as soon as possible may also factor into the trial court's decision. *Succession of Harrell v. Erris–Omega Plantation, Inc.*, 12–696 (La.App. 3 Cir. 12/5/12), 104 So.3d 751, *writ denied*, 13–438 (La.4/5/13), 110 So.3d 595.

The trial court did not abuse its discretion in refusing to grant Allen a continuance. Allen had more than three years to develop his case against PHI and failed to do so. He presents no good ground upon which the trial court should have granted a continuance. Accordingly, this assignment of error is without merit.

---

pilot, a fact which Allen claims "was prejudicial to his case, as the judge viewed the case in light of his special circumstances, rather than the view of the average juror." He also claims that the "fact that he was a licensed pilot may have tempered his ruling and based it on his personal knowledge, rather than the *evidence presented* at trial." On the contrary, there was no evidence presented at trial which could have swayed the trial court. Further, the trial court's determination that expert testimony would be required for a lay person to understand the mechanics and functions of a helicopter was not an error. This type of information is simply not known by an average person.

## CONCLUSION

The judgment of the trial court granting a directed verdict in favor of PHI, Inc., is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, Hayward Allen, III.

**AFFIRMED**.