**John FARRELL, Petitioner,**

v.

**DEPARTMENT OF THE INTERIOR, Respondent.**

No. 02–3108.

United States Court of Appeals, Federal Circuit.

Dec. 18, 2002.

Joseph V. Kaplan, Passman & Kaplan, P.C., of Washington, DC, argued for petitioner.

Kevin W. McArdle, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Brian M. Simkin, Assistant Director.

Before MICHEL, GAJARSA and DYK, Circuit Judges.

DYK, Circuit Judge.

John Farrell appeals the December 6, 2001, final order of the Merit System Protection Board denying review of his demotion by the United States Park Police for conduct unbecoming an officer. *Farrell v. Dep't of Interior*, No. DC–0752–98–B–I, slip op., 90 M.S.P.R. 451 (M.S.P.B. Dec. 6, 2001) ("Final Order"). We conclude that although the Park Police departed from the Table of Penalties in demoting the appellant, such a departure was not unlawful, nor was the demotion unreasonable. We affirm.

## BACKGROUND

On July 16, 1996, Captain Ronald DeAngelo of the Park Police found a photocopy of a purported parody entitled "The Quest, The Final Passage Home," in his inbox, written by someone who identified himself as "The Phantom." Besides containing sexually explicit passages and references to some characters as "Moorish," "The Quest" insinuated that several easily identifiable officers were lesbians and that an officer married to another member of the Park Police had had an adulterous liaison with a third member of the Park Police. Captain DeAngelo filed an administrative complaint on July 22, 1996. That complaint led to an investigation by the Internal Affairs Office of the Park Police.

On August 29, 1996, appellant Farrell, then a lieutenant with the Park Police, was interviewed by Internal Affairs. During that interview, Farrell admitted that he was "the sole author and creative force" behind "The Quest," which, he explained, was in part "strictly fictional" and in part based "on actual acts" of members of the Park Police, referred to in "The Quest" by "made up names [that] actually identified people and in some cases [by] made up names [that] were created to see if it would catch on." According to Farrell, "The Quest" was a parody of medieval tales whose purpose was "to bring ... issues to the Force's attention out of frustration ... that he could not address ... in any other way," though Farrell acknowledged that "if you are a sick individual and you wish to read it a certain way you can read it any way you wish." Farrell admitted that he wrote "The Quest" at home in installments, typed it into the computer at work, and surreptitiously distributed copies of it within the Park Police over a period of several months.

On November 12, 1997, almost sixteen months after Farrell admitted writing "The Quest," Deputy Chief Alvin D. Hinton, Commander, Operations Division, proposed that Farrell be demoted to the rank of sergeant "to promote the efficiency of the service," based on the following charge:

Charge No. 1—Conduct unbecoming an Officer, i.e., Use of demeaning, defamatory, or degrading remarks comments, or statements involving subordinates, peers, and supervisory personnel.

The letter also listed the General Orders that Deputy Chief Hinton believed Farrell had violated:

General Order 31.01, IV(A): An officer shall refrain from conduct that impairs the efficiency of the Force or causes the loss of public confidence in the Force.

General Order 31.01(IV)(B): An officer shall maintain decorum, command of temper, and exercise patience and discretion at all times. Harsh, violent, profane, or insolent language shall not be used. The officer shall conduct himself/herself in a professional manner.

General Order 32.03(II)(25): All officers shall render respect to supervisors and associates [excerpt].

General Order 32.03(II)(2): An officer shall comply with all General Orders, Special Orders, memorandums, or directives that may be issued by the Chief or his/her designee.

Farrell was also charged with violating a general order that required "all officers" to "comply with all General Orders, Special Orders, memorandums, or directives that may be issued by the Chief or his/her designee," which included Memorandum No. 9, the pertinent sexual harassment policy. "The Quest," according to the charge letter, "was written in double entendre style that could be and, in fact, was construed by some as sexually explicit,

graphic, and even pornographic." The letter explained

> Supervisors, especially Police officers, occupy positions of great trust and responsibility. The behavior described above evidences that you have seriously breached the employee-employer relationship in your dealings with your superiors, peers, and subordinates. Additionally, it has impacted on the confidence I have in your ability to function as a supervisor.

The demotion was from shift commander, a position in which the employee directly supervises others but is subject to very little supervision himself, to sergeant, a position which, though still supervisory, is subject to significantly more direct supervision. Farrell was also charged with "Misuse of government equipment," for which he was ultimately punished with a three-day suspension.[1]

On July 1, 1998, after Farrell had replied to the charge letter, Acting Chief of the Park Police Carl R. Holmberg issued a decision letter which sustained the charge and the demotion, despite Farrell's "past performance and [his] length of employment as a United States Police Officer." "As a supervisor, you are expected to serve as an example for subordinate officers to emulate," the letter said. "Your behavior is shocking and reflects little respect on your part for others, particularly minorities and women" because of references to some characters as "Moorish," which Farrell had admitted meant that they were black, and sexually explicit remarks about female members of the Park Police. Chief Holmberg later testified that because "The Quest" "took a while to compose, to produce, and to distribute," Farrell's transgression "proved . . . that he did not work well absent supervision" and thus had to be demoted. Chief Holmberg acknowledged in his decision letter that Farrell had been ill with cancer while he was writing "The Quest," but he declined to mitigate the penalty because Farrell had not adduced any evidence that his medical condition had "affected [his] ability to perform professionally" or impaired his "judgment." Chief Holmberg did not sustain the charge of sexual harassment, however. He also testified that he would have imposed the same penalty had Farrell not also misused government property.

The National Park Service uses a manual entitled "Discipline and Adverse Actions," which supplements directives from the Office of Personnel Management and the Department of the Interior. It includes as an appendix a "Disciplinary Action Guide," commonly known as the Table of Penalties, a copy of which is attached to this opinion. It sets out, in table form, offenses and the range of penalties suggested for the first, second, and subsequent offenses. At his deposition, Chief Holmberg acknowledged that he had "relied" on Offense 9(c) of the Table, but he later corrected himself and testified that he had "used" Offense 9(a) in the Table and the accompanying Note 4 when selecting Farrell's penalty because "that was the closest guide that I could come to in the table of penalties." Offense 9(a) reads:

> 9. Discrimination because of sex, color, religion, national origin, age, physical or mental handicap, political affiliation, marital status, or other non-merit factor. (a) Use of critical, demeaning, slanderous, inflammatory, defamatory, ignominious or degrading remarks, comments, gestures, observations, or statements.

---

1. Farrell did not appeal the charge or the suspension to the Board, apparently because the Board lacked jurisdiction as the suspension was for less than fourteen days. *See* 5 U.S.C. § 7512 (2000); Initial Decision at 9.

The Table suggests that the penalty for a first such offense may range from a written reprimand to a five-day suspension; but Note 4 counsels that "[i]f the employee occupies a supervisory or managerial position, serious consideration should be given—even for the first offense—to removal of supervisory responsibilities or reassignment from the supervisory position (which may involve a demotion)." Despite his consultation of 9(a), Chief Holmberg later testified that he had not sustained a charge of "sexual harassment," only "conduct unbecoming an officer." Chief Holmberg also admitted that he had not applied paragraph 10 of the Table, which covers "Making false, malicious or highly irresponsible statements against supervisors, other employees, or subordinates;" has a maximum penalty of a five-day suspension; and makes no reference to Note 4.

Farrell appealed his demotion to the Board. The administrative judge affirmed after a trial at which Farrell did not testify. *Farrell v. Dep't of Interior*, No. 0752–98–0728–B–1 (MSPB Nov. 1, 2000) ("Initial Decision"). She found that the charge of conduct unbecoming an officer had been proved by a preponderance of the evidence. *Id.* at 8–9. Although the administrative judge found that "sexual harassment" had been neither charged nor proved, "proof of the violation was not necessary to sustain the charge of conduct unbecoming an officer." *Id.* at 10. Chief Holmberg's consultation of Guideline 9(a) was not error, the administrative judge held, because "an agency's table of penalties is only one factor to be considered in assessing the reasonableness of a penalty, and an agency may deviate from the guidelines where a more severe penalty is reasonable." *Id.* at 13 (citing *Chatman v. Dep't of Army*, 73 M.S.P.R. 582, 587 (1997)). The administrative judge also found that the penalty had the requisite nexus with the offense and was consistent

with the factors enunciated in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280, 306 (1981). Initial Decision at 11–13.

The Board affirmed. *Farrell v. Dep't of Interior*, Docket No. DC–0752–98–0728–B–1 (M.S.P.B. Dec.6, 2001) (Final Order). Farrell timely appealed his demotion to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our standard of review for decisions of the Board is limited by statute, which directs us to set aside Board decisions only if they are found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (2000); *Yates v. Merit Sys. Prot. Bd.*, 145 F.3d 1480, 1483 (Fed. Cir.1998).

### I.

### A.

■ Although the appellant "does not contest that some discipline is warranted for his authorship of 'The Quest,'" (Appellant's Br. at 30), he argues that the Park Police acted unlawfully by failing to abide by their Table of Penalties. As noted above, the appellant was charged with: "Conduct unbecoming an Officer, i.e., Use of demeaning, defamatory, or degrading remarks, comments, or statements involving subordinates, peers, and supervisory personnel." The government urges that the Park Police did not in fact depart from the Table in assessing the penalty of demotion for this charge. We disagree.

Paragraph 9(a), which the government argues is applicable, covers: "Use of critical, demeaning, slanderous, inflammatory, defamatory, ignominious or degrading remarks, comments, gestures, observations, or statements." Paragraph 9(a) makes reference to Note 4, which provides: "If the employee occupies a supervisory or managerial position, serious consideration should be given—even for the first offense—to removal of supervisory responsibilities or reassignment from the supervisory position (which may involve a demotion)." The government argues that paragraph 9(a) covers the appellant's conduct because it is "substantively identical" to the charged offense and that Note 4 authorizes demotion even for a first offense for supervisory personnel. (Appellee's Br. at 16.) If the language of 9(a) were divorced from the preamble, the government might well be correct. That language, however, must be read together with the preamble to paragraph 9: "Discrimination because of sex, color, religion, national origin, age, physical or mental handicap, political affiliation, marital status, or other non-merit factor." The administrative judge specifically found that the appellant had not been charged with, nor had the agency proved, sexual harassment. Initial Decision at 13. And the government at oral argument conceded that the appellant was not charged with discrimination because of sex. We hold that the language of the preamble limits paragraph 9(a), that paragraph 9 refers only to charges of "discrimination," and that appellant was not charged with discrimination.

Appellant argues that paragraph 10 was the applicable portion of the Table. It covers: "Making false, malicious or highly irresponsible statements against supervisors, other employees, or subordinates." Its maximum penalty for a first offense is a 5–day suspension, and it contains no reference to Note 4. We agree with the appellant that paragraph 10 is the most relevant portion of the Table. Thus the Table itself does not prescribe the penalty that was imposed here. But that does not resolve the question of whether the departures from the Table are permissible.

## B.

We accordingly must decide whether the Table of Penalties is binding on the Park Police. In *Power v. United States*, 209 Ct.Cl. 126, 531 F.2d 505 (1976), our predecessor court made clear that "[t]he first test for an invalid penalty is whether or not the sanction exceeds the range of permissible punishment specified by statute or regulation." *Id.* at 507. Here the parties agree that neither a statute nor an applicable regulation fixes the requisite punishment and that the Table was not promulgated as a formal regulation or as the result of notice and comment rulemaking.

■ If an agency policy statement is intended to impose obligations or to limit the rights of members of the public, it is subject to the Administrative Procedure Act, and, with certain exceptions, must be published in the Federal Register as a regulation. 5 U.S.C. § 553(b)-(c) (2000). If it is not, it is invalid. *See generally Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1374–75 (Fed.Cir.2001).

■ Here, however, we have a different situation. The issue is not whether the agency statement is binding on the public, but whether it is binding on the agency itself. The effect of such agency statements has been addressed frequently. The general consensus is that an agency statement, not issued as a formal regulation, binds the agency only if the agency intended the statement to be binding.

*See, e.g., Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 373–74, 377–82, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States v. Alameda Gateway Ltd.,* 213 F.3d 1161, 1168 (9th Cir.2000); *Chiron Corp. v. Nat'l Transp. Safety Bd.,* 198 F.3d 935, 943–44 (D.C.Cir.1999); *Troy Corp. v. Browner,* 120 F.3d 277, 287 (D.C.Cir.1997); *Am. Portland Cement Alliance v. Envtl. Prot. Agency,* 101 F.3d 772, 776 (D.C.Cir.1996); *Prof'ls & Patients for Customized Care v. Shalala,* 56 F.3d 592, 595–96 (5th Cir.1995); *Rapp v. United States Dep't of Treasury, Office of Thrift Supervision,* 52 F.3d 1510, 1522 (10th Cir. 1995). *But see United States Tel. Ass'n v. Fed. Communications Comm'n,* 28 F.3d 1232, 1234–35 (D.C.Cir.1994) (policy statement not binding on agency unless promulgated as legislative rule; otherwise invalid); *Cmty. Nutrition Inst. v. Young,* 818 F.2d 943, 948 (D.C.Cir.1987).

■ The primary consideration in determining the agency's intent is whether the text of the agency statement indicates that it was designed to be binding on the agency. *Vitarelli,* 359 U.S. at 539, 79 S.Ct. 968; *Service,* 354 U.S. at 373–74, 377–82, 77 S.Ct. 1152; *Alameda Gateway,* 213 F.3d at 1168; *Chiron,* 198 F.3d 935 at 943–44; *James v. United States Parole Comm'n,* 159 F.3d 1200, 1205–06 (9th Cir.1998); *Prof'ls & Patients for Customized Care,* 56 F.3d at 597; *Brock v. Cathedral Bluffs Shale Oil Co.,* 796 F.2d 533, 537–38 (D.C.Cir.1986); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n,* 506 F.2d 33, 39 (D.C.Cir.1974). For example, in *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), a seminal case considering whether the Secretary of State could discharge an employee without following the procedures set forth in an unpublished manual, the Supreme Court held that the manual bound the Secretary in part because it "purported to set forth definitively the procedures and standards to be followed." *Id.* at 376, 77 S.Ct. 1152. *See also Vitarelli,* 359 U.S. at 539, 79 S.Ct. 968.

This methodology for determining whether an agency is bound by a previous statement is consistent with that taken in our previous cases. For example, in *Hamlet v. United States,* 63 F.3d 1097 (Fed. Cir.), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996), this court held that a statement in a federal personnel handbook, "regardless of whether [it] was published or promulgated under the standards set out in the APA … is a regulation entitled to the force and effect of law" only if, among other things, "the promulgating agency intended the provision to establish a binding rule." *Id.* at 1105.

This approach has also been specifically applied to penalty schedules. In *Rapp,* the Tenth Circuit held that the Office of Thrift Supervision ("OTS") was free to depart from a penalty matrix it had published in the Federal Register and impose a harsher penalty because the "record establishe[d] that the OTS never intended to bind itself to the matrix." 52 F.3d at 1522. In *Daub v. United States,* 154 Ct.Cl. 434, 292 F.2d 895 (1961), our predecessor court considered a table of penalties which contained a preface that advised that it "will be used as a guide in imposing disciplinary action" and "may not successfully meet the demands of all situations," so that deciding officials must "use judgment in determining proper action for violations not covered." *Id.* at 897. The court found that this advisory language made the table nonbinding; it was "a guide to administrative officers, and not an immutable schedule." *Id.*

■ In this case, the document is called a "Guide." For each offense, a range of penalties is given, sometimes without indi-

cation of how the penalty should be determined. It contains no mandatory language. The Table appears as Appendix A in a personnel manual applicable to the National Park Service as a whole, National Park Service Personnel Issuance Release No. 88: Discipline and Adverse Actions, Basic FPM, NPS FPM 752,1 (hereinafter "Manual"). The manual explains that the Table only

> provides a general framework within which supervisors may exercise sound judgment in dealing with particular circumstances, although ordinarily the penalty selected will fall within the range provided by the guide. The guide does not replace supervisory judgment and, with the exception of misuse of a Government vehicle, does not require specific penalties.[2]

Manual at 36. Appendix A itself notes that a penalty "may vary from those contained in this guide." *Id.* at 43. Moreover, a generally applicable portion of the manual instructs deciding officers to consider demotion "when misconduct by an individual in a supervisory position causes the individual's superior to lose confidence in his/her ability to supervise effectively," *id.* at 8, which belies Farrell's claim that the Table categorically excludes demotion for supervisors except when Note 4 applies.

In addition, the Table is far from comprehensive. It does not cover the distribution of sexually explicit material such as "The Quest." It also does not prescribe penalties for the violation of the general orders that Park Police officers must follow, several of which Farrell violated in this case. Initial Decision at 7. Binding norms, by contrast, "so fill[ ] out the statutory scheme that upon application one need only determine whether a given case is within the rule's criteria." *Prof'ls & Patients for Customized Care*, 56 F.3d at 597 (quoting *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1377 (11th Cir.1983)). Like the scheme in *Prof'ls & Patients for Customized Care*, however, the Table is "broad, general, [and] elastic." 56 F.3d at 601. Rather than a binding norm, in this case "the table of penalties was intended to be a guide to administrative officers, and not an immutable schedule." *Daub*, 292 F.2d at 897. The Park Police were not bound by the Table.

To be sure, in *Daub* our predecessor court considered departure from the Table of Penalties in holding that the particular penalty imposed in that case was so massively disproportionate to the offense as to be arbitrary and capricious, 292 F.2d at 897; but that was simply a recognition that compliance with an advisory (rather than binding) Table is one of many factors to be considered in judging whether a penalty is arbitrary or capricious, as subsequent cases recognize. *Swentek v. United States*, 228 Ct.Cl. 468, 658 F.2d 791, 796 (1981); *Power*, 531 F.2d at 507–08. Those factors were later summarized in *Douglas*, which includes such a departure as one of twelve factors to be considered in determining "the appropriateness of a penalty." 5 M.S.P.R. at 306("(7) consistency of the penalty with any applicable agency table of penalties").

### C.

 Nor did the Park Police treat the Table in either the Proposal or Decision Letters as binding. In his decision letter, Chief Holmberg explained that he had chosen demotion over lesser punishments be-

---

2. Although part of the record before the Board, strangely, the personnel manual from which the Table was extracted was not cited by either party and was not included in the joint appendix.

cause Farrell's behavior was "shocking and reflects little respect on [his] part for others, particularly minorities and women. The demeaning terms used in The Quest concerning [his] peers, subordinate and superior officers not only erodes the employee-employer relationship, but shows little respect for the rights of these employees in the workplace." Nowhere does Chief Holmberg mention the Table in the contemporaneous material. Rather, Chief Holmberg delineated the "factors" he had "considered" in making his decision in the decision letter:

> (1) the nature and seriousness of the offenses with which you were charged and their relationship to your official duties; (2) your role as supervisor and your contacts with the public; (3) your lack of prior discipline; (4) the lack of confidence in your ability to perform your duties in your current position; (5) your notice of any rules that were violated in committing the offense; (7) [sic] the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by you and others; (8) the fact that you have demonstrated poor rehabilitative potential; (9) consistency of penalty with those imposed upon other employees for the same or similar offense; and (10) your past performance and your length of employment as a United States Police Officer.

These are the factors that agencies are directed to consider by *Douglas*, 5 M.S.P.R. at 306. As for the Table itself, during trial, Chief Holmberg said merely that he had "used Section 9–A" because "that was the closest guide that I could come to in the table of penalties."

This case is also distinguishable from *Russo v. United States Postal Service*, 284 F.3d 1304 (Fed.Cir.2002), on which Farrell relies. In that case the Board sustained a penalty on a less serious ground than the agency had charged; the agency had determined that the employee had made a "racist" comment, whereas the Board concluded that the comment was merely "offensive." *Id.* at 1310. This court remanded the case to the Board for mitigation of penalty because "the linchpin" of the agency's decision had been "removed." *Id.* at 1310 n. 2. In this case, by contrast, the Board sustained the demotion on the same ground on which the agency imposed it. Farrell's assertion that the penalty was based on findings of sexual harassment and misuse of government property is incorrect. Substantial evidence supports the administrative judge's finding that Chief Holmberg did not sustain the charge of sexual harassment and would have imposed the same penalty had Farrell not also misused government property. A remand is therefore unnecessary.

### D.

■ Finally, there is no constitutional requirement that an agency provide advance notice of the possible range of penalties. Due process does not require that an agency post the specific penalties to which an employee could be subject for any particular violation. In *Brown v. Department of Navy*, 229 F.3d 1356 (Fed.Cir.2000), this court upheld the removal of a civilian employee who coordinated recreational services for the Marines for engaging in an adulterous affair with a Marine's spouse. *Id.* at 1363. Even though there had not been "formal notice" that the civilian employee could be subject to removal for such behavior, the employee's "common sense should have forewarned him." *Id.; accord Mings v. Dep't of Justice*, 813 F.2d 384, 389 (Fed.Cir.1987) (employee could be disciplined for conduct not specifically prohibited); *Brown v. Dep't of Transp.*, 735 F.2d 543, 548 (Fed.Cir.1984) (employee's "common sense should have forewarned him" of possibility of discipline for his actions even

though not specifically prohibited); *Brousseau v. United States,* 226 Ct.Cl. 199, 640 F.2d 1235, 1247 (1981). Just as the border patrol agent in *Mings* should have known that his anti-Hispanic and anti-Catholic letter could subject him to removal, 813 F.2d at 388–89, Farrell's common sense should have forewarned him that distributing sexually explicit and degrading stories about his fellow employees could subject him to demotion, no matter what distinctions he could make using the Table.

## II.

 Farrell also urges that the penalty should be set aside because it is unreasonable in light of the factors enumerated in *Douglas,* 5 MSPB 313, 5 M.S.P.R. at 305–06. This court, however, does not require the Board to "consider every one of the 12 *Douglas* factors 'mechanistically by [a] preordained formula.'" *Webster v. Dep't of Army,* 911 F.2d 679, 686 (Fed.Cir. 1990) (quoting *Douglas,* 5 MSPB 313, 5 M.S.P.R. at 306), *cert. denied,* 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). The administrative judge considered Farrell's supervisory position, the nature of the misconduct, the length of Farrell's service, his lack of remorse, and the effect of the proposed punishment on Farrell and others. Initial Decision at 12–13.[3] We

hold that the administrative judge's discussion of the *Douglas* factors was sufficient.[4]

 Farrell also urges that the administrative judge erred in her determination of the seriousness of his offense (1) because the nearly 16–month delay between the discovery of Farrell's infraction and the beginning of disciplinary proceedings allegedly showed that the offense was not considered serious, (2) because Farrell was given temporary upgrades to major during that period, and (3) because Chief Hinton modified his proposal notice before he sent it to Farrell to increase the penalty to demotion. Our review of penalties imposed by agencies "is highly deferential, and requires a showing that the penalty is grossly disproportionate to the offense charged." *Bieber v. Dep't of Army,* 287 F.3d 1358, 1365 (Fed.Cir.2002) (citations omitted); *accord Baker v. Dep't of Health & Human Servs.,* 912 F.2d 1448, 1456 (Fed.Cir.1990); *Miguel v. Dep't of Army,* 727 F.2d 1081, 1083 (Fed.Cir.1984). Under this deferential standard, there has been no such showing in this case.[5]

## CONCLUSION

For the foregoing reasons, the decision of the Merit Systems Protection Board is affirmed.

*AFFIRMED.*

---

3. Farrell asserts that, contrary to the administrative judge's finding, he was indeed remorseful, as he began his oral reply to the charges with an apology, a fact noted by the administrative judge. Initial Decision at 13. This apology was followed, however, by a lengthy justification of his actions during which he attempted to explain away offensive portions of "The Quest" and attacked his superiors, the subjects of "The Quest," and Internal Affairs. The administrative judge's finding of lack of remorse is thus supported by substantial evidence.

4. Farrell also asserts that Chief Holmberg failed to consider the length of his service, his past performance, and his illness in determining the penalty. The administrative judge's

contrary findings are supported by the decision letter, which mentioned Farrell's length of service as one of the factors considered in selecting his punishment and explained that his illness was irrelevant because Farrell failed to adduce any evidence that his medical condition had "affected [his] ability to perform professionally" or impaired his "judgment."

5. Although we are troubled by the nearly 16–month delay between the discovery of Farrell's infraction and the beginning of disciplinary proceedings, Farrell does not claim that the agency lacked the authority to demote him because of the delay.

COSTS

No costs.

### Appendix A

### NATIONAL PARK SERVICE

### DISCIPLINARY ACTION GUIDE

#### NOTES TO USERS

This guide is to be used by managers and Personnelists in selecting the most appropriate discipline or adverse action necessary to correct a deficient situation. This guide will be used in concert with the Department of the Interior Disciplinary Action Guide contained in 370 DM 752, 3, Appendix A.

In selecting an appropriate penalty, the totality of the situation must be weighed. This might include consideration of the position the employee occupies in the organization; potential for rehabilitation of the employee; prior offenses and past disciplinary record/ mitigating circumstances etc.

The guide does not require specific penalties—with the exception of willful misuse of a Government vehicle. Rather, it is to be used as measure for selecting a penalty to fit the particular situation. The penalty proposed and finally decided upon may vary from those contained in this guide. A deciding official may choose to impose a lesser penalty than that which was proposed; however, in no circumstance, may a more severe penalty be imposed.

This guide lists only disciplinary actions. It does not mention oral warnings and counseling sessions, counseling letters, or similar actions which may be more appropriate for correcting minor offenses and would not be characterized as disciplinary actions.

| OFFENSE | FIRST OFFENSE | SECOND OFFENSE | SUBSEQUENT OFFENSE |
|---|---|---|---|
| 1. Unscheduled absence, not for good cause. (See Note 1) | Written Reprimand to 3–day Suspen. | 3–Day Suspension to 14–Day Suspen. | 14–Day Suspen. to Removal, including Demotion |
| 2. Misuse of sick leave or failure to follow proper procedures for sick leave usage. (See Note 1) | Written Reprimand to 3–Day Suspen. | 3–Day Suspension to 14–Day Suspen. | 14–Day Suspen. to Removal, including Demotion |
| 3. Failure to follow proper procedures in requesting leave. (See Note 1) | Written Reprimand to 3–Day Suspen. | 3–Day Suspension to 14–Day Suspen. | 14–Day Suspen. to Removal, including Demotion |
| 4. Insubordination, refusal to comply with proper orders, or disregard of directives or regulations. | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion |
| 5. Rude boisterous play which adversely affects production, discipline or morale; use of abusive or offensive language; quarreling or inciting to quarrel. (See note 2) | | | |
| a. When there is no damage to property or physical injury to self or other employee. | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion |
| b. When either self or other employee suffers | Written Reprimand to 15–Day Suspen. | 15–Day Suspen. to Removal, including | Removal |

| | | | |
|---|---|---|---|
| injury or there is damage to Government or personal property. | | Demotion | |
| 6. Loss or destruction of, or damage to Government property. (See Note 2) | | | |
| a. When damage is minimal or unintentional. | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to 14–Day Suspen. | 15–Day Suspen. to Removal, including Demotion |
| b. When damage is major, intentional, when loss of property occurs, or when there is proof of gross negligence or malfeasance on the part of the employee. | 10–Day Suspension to Removal, including Demotion | Removal | |
| 7. Fighting, threatening bodily harm to another, or physical resistance to responsible authority. (See Notes 2, 3 and 7) | | | |
| a. When extenuating circumstances are present and the other individual is not injured. | Written Reprimand to Removal | 5–Day Suspension to Removal, including Demotion | 15–Day Suspen. to Removal including Demotion |
| b. When it is intentional, without remorse, or another individual is injured. | 5–Day Suspension to Removal including Demotion | 15–Day Suspen. to Removal, including Demotion | Removal |
| 8. Willfully using or authorizing use of Government motor vehicles, including aircraft, boats and snow-mobiles, etc. for other than official purposes. | 30–Day Suspen. to Removal | Removal | |
| 9. Discrimination because of sex, color, religion, national origin, age, physical or mental handicap, political affiliation, marital status, or other non-merit factor. | | | |
| a. Use of critical, demeaning, slanderous, inflammatory, defamatory, ignominious or degrading remarks, comments, gestures, observations, or statements. (See Note 4) | Written Reprimand to 5–Day Suspen. | 5–Day Suspen. to Removal including Demotion | 30–Day Suspen. to Removal, including Demotion. |
| b. Careless or negligent discrimination (See Note 4) | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to Removal, including Demotion | 30–Day Suspen. to Removal, including Demotion |
| c. Deliberate or willful discrimination or sexual harassment in any aspect of employment or which adversely reflects on the National Part Service or the Department of the Interior. (See Note 4) | 14–Day Suspension to Removal, including Demotion | Removal | |

| Offense | First Offense | Second Offense | Third Offense |
|---|---|---|---|
| 10. Making false, malicious or highly irresponsible statements against supervisors, other employees, or subordinates. | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to Removal, including Demotion | 15–Day to Removal including Demotion. |
| 11. Requiring a subordinate to violate regulations or rules; deprivation of an employee's rights; reprisal for use of appellate procedures or because of EEO or LMR activities; reprisal for an employee being a "whistleblower"; or a violation of any prohibited personnel practice. | Written Reprimand to Removal, including Demotion | 5–Day Suspension to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion |
| 12. Inattention to duty. | | | |
| a. When hazard to personnel or property is not acute and when no injury or loss is involved or when it is inadvertent. | Written Reprimand to 5–Day Suspen. | 5–Day Suspension to 14–Day Suspen. including Demotion | 15–Day Suspen. to Removal including Demotion |
| b. When hazard to individuals or property is acute or when there has been injury or significant loss. | 10–Day Suspension 30–Day Suspen. including Demotion | 30–Day Suspen. to Removal, including Demotion | Removal |
| 13. Failure to observe safety practices, including failure to use seat belts, eye protection and protective ear devices. | | | |
| a. When hazard to life or property is not acute or when no injury or loss is involved. | Written Reprimand 5–Day Suspension | 5–Day Suspension to 14–Day Suspension | 15–Day Suspen. to Removal, including Demotion |
| b. When hazard is acute or significant property loss is involved. | 10–Day Suspen. to Removal, including Demotion | 30–Day Suspen. to Removal, including Demotion | Removal |
| 14. Acceptance of a gratuity, money or other item of value (see Note 2 and 7) | Written Reprimand to Removal, including Demotion | Removal | |
| 15. Conversion of Government funds or property to personal use. (This includes misuse of Government property including photocopiers, computers, telephone, official mail, etc.) | Written Reprimand to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion | Removal |
| 16. Gambling, promoting, or participating in such activities, i.e. sports pools, lotteries, betting, etc. | 5–Day to 30–Day Suspension | 10–Day Suspen. to Removal | 30–Day to Removal |
| 17. Sale or transfer of illegal substances/drugs on Government premises or property or duing duty hours. (See Note 5) | 30–Day Suspension to Removal | Removal | |

| | | | |
|---|---|---|---|
| 18. Use of illegal substances on Government premises or during duty hours. (See Note 5) | 14–Day Suspension to Removal | Removal | |
| 19. Reporting for duty or being so intoxicated as to be unable to properly perform assigned duties, or to be a hazard to self or others. (See note 6) | Written reprimand to Removal | 10–Day Suspen. to Removal | 15–Day Suspen. to Removal |
| 20. Improper or unauthorized use of official credentials, including a law enforcement commission, or official credit card. | 5–Day Suspension to Removal including Demotion | 10–Day Suspen. to Removal, including Demotion | 30–Day Suspen. to Removal, including Demotion |
| 21. Actions which reflect negatively on the service, misconduct in uniform, inappropriate or unauthorized wearing of NPS Uniform (See Note 7) | Written Reprimand to 3–Day Suspen. | 3–Day Suspen. to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion |
| 22. Unethical use of official authority or information in the appointment, transfer, advancement or retention of a relative. | 14–Day Suspension to Removal, including Demotion | Removal | |
| 23. Unauthorized taking of Government property or property of other employees. | | | |
| a. Where the value is minimal and the action was not deliberate | Written Reprimand to Removal | 15–Day Suspens. to Removal | 30–Day Suspen. to Removal |
| b. Where the value is substantial or when the action was deliberate. | 30–Day Suspension to Removal | Removal | |
| 24. Falsification, misrepresentation, or concealment of material fact in connection with work, or in any record or investigation or other proceeding, including financial disclosure statements, travel vouchers, time and attendance records, etc. | | | |
| a. When the employee does not gain in a substantial financial manner or when the action is a result or poor judgment, rather than a deliberate deed. | Written Reprimand to Removal | 5–Day Suspen. to Removal, including Demotion | 15–Day Suspen. to Removal, including Demotion |
| b. When there is significant or personal gain or when the action is willful. | 15–Day Suspen. to Removal, including Demotion | 30–Day Suspen. to Removal, including Demotion | Removal |
| 25. Off duty misconduct of such major import that the employee is unable to fulfill his or her responsi- | 10–Day Suspen. to Removal | 30–Day Suspen. to Removal | Removal |

bilities or where there is adverse effect on the reputation of the Department of the Interior or the National Park Service. (* The need for an indefinite suspension should also be examined.)

26. Refusal to accept a management directed reassignment, which has been effected for the benefit of the Department of the Interior, the National Park Service or the employee. Removal

## NOTES

Note 1 See 370 DM 630 Subchapter 1.4. In certain situations, the range of penalties may be extended for the first offense.

Note 2 This may also involved criminal violations. Disciplinary or adverse action may be based upon the underlying conduct, the criminal conviction or both. You need not wait for the criminal conviction to proceed with the action. Relying solely on a criminal conviction could present problems if the conviction is overturned.

Note 3 A threat must be examined in the context with which it was made—a declaration of a desire to injure is not a threat. The following factors must be considered in deciding whether an employee threatened another:

- the listener's reaction
- the listener's apprehension of harm
- the speaker's intent
- any conditional nature of the statements
- the attendant circumstances

Note 4 if the employee occupies a supervisory or managerial position, serious consideration should be given—even for the first offense—to removal of supervisory responsibilities or reassignment from the supervisory position (which may involve a demotion).

Note 5 Depending upon the circumstances of the particular situation, the requirements of 370 DM 792 regarding the offering of counseling and rehabilitative assistances must also be met. If the proposed action is a removal, Personnelists should research the necessity for a "firm choice."

Note 6 For situations where the employee is intoxicated, he or she should be removed from the worksite—either by being sent home (with management ensuring that the employee will not drive a vehicle) or being sent to a health unit. Disciplinary or adverse action in this regard should conform to most recent Board direction.

Note 7 For instance of misconduct in uniform, the misconduct itself should be assessed a penalty, which might be greater if the actions occurred while visibly identified as an NPS employee.