Second, the DAB similarly found that Pennsylvania failed to comply with §§ 95.507(b)(1)-(4). That regulation requires a PACAP to contain:
(1) An organization chart showing the placement of each unit whose costs are charged to the programs operated by the State agency.
(2) A listing of all Federal and all non-Federal programs performed, administered, or serviced by these organizational units.
(3) A description of the activities performed by each organizational unit and, where not self-explanatory an explanation of the benefits provided to Federal programs.
(4) The procedures used to identify, measure, and allocate all costs to each benefiting program and activity (including activities subject to different rates of FFP).
(5) The estimated cost impact resulting from the proposed changes to a previously approved plan....
(6) A statement stipulating that wherever costs are claimed for services provided by a governmental agency outside the State agency, that they will be supported by a written *442 agreement that includes, at a minimum (i) the specific service(s) being purchased, (ii) the basis upon which the billing will be made by the provider agency (e.g. time reports, number of homes inspected, etc.) and (iii) a stipulation that the billing will be based on the actual cost incurred. This statement would not be required if the costs involved are specifically addressed in a State-wide cost allocation plan, local-wide cost allocation plan, or an umbrella/department cost allocation plan.
(7) If the public assistance programs are administered by local government agencies under a State supervised system, the overall State agency cost allocation plan shall also include a cost allocation plan for the local agencies....
45 C.F.R. § 95.507(b).
In its decision on the Aging Waiver appeal, after noting that much of the briefing in connection with the appeal "discusses whether or not subsections 95.507(b)(6) and (7) applied and were met in this case," the DAB declined to resolve that issue because it found that "Pennsylvania did not comply with the other content requirements for the PACAP in section 95.507(b)(1)-(4) on which CMS also relied." (DAB Aging Waiver Op., Doc. No. 16 at 21.) The DAB found that "[m]ost obviously, section 95.507(b)(4) essentially reiterates that the 'procedures used to identify, measure, and allocate all costs to each benefiting program and activity' ... must be included in the PACAP itself," and reiterated that as "Pennsylvania has not even pointed to any identification of the costs or any description of the procedures related to the AAAs' administrative costs, ... their omission from the PACAP is apparent." (Id. at 22.) For this additional reason, the DAB found that the relevant administrative costs were subject to disallowance as they "were not claimed in accordance with an approved PACAP." Id. at 23.[9]
In response, Pennsylvania maintains that it was permitted to use the "one sentence procedure of 45 C.F.R. § 95.507(b)(6) to claim county-level costs, and the agency changed its interpretation of the cost allocation regulations without notice or explanation," referring the Court to its arguments supporting one of its record-based challenges to the DAB's decisions. (Doc. No. 30 at 29.) The Court reads Pennsylvania's argument as essentially conceding its failure to comply with the cited regulations specifying the content of its PACAP, attacking instead CMS' refusal to permit it to rely on 45 C.F.R. § 95.507(b)(6) to claim county-level costs. In doing so, Pennsylvania argues that CMS' refusal was due to a silent change in agency policy, an issue upon which the DAB should have permitted record development.[10]
B. Pennsylvania's Arguments that the DAB's Decisions were Arbitrary or Capricious
1. The DCA Best Practices Manual
First, Pennsylvania argues that the DAB's decisions upholding the disallowances were arbitrary or capricious because CMS acted contrary to agency-wide policy *443 in connection with its disallowance of the relevant costs. (Doc. No. 20 at 22.) Specifically, Pennsylvania argues that the DCA[11] Best Practices Manual precludes CMS from taking the disallowances because CAS failed to notify Pennsylvania that an amended PACAP was required to cover the Aging Waiver and MATP county-level administrative costs, and permit an amendment prior to issuing a disallowance. (Doc. No. 20 at 22-26.) The relevant provision of the "DCA Best Practices Manual for Reviewing Public Assistance Cost Allocation Plans" states as follows: 6.200-30 Failure to Amend Cost Allocation Plan
If as a result of a review or from other information obtained it is determined that a State agency failed to amend its cost allocation plan as required by 45 CFR 95.509, the DCA will notify the State that an amended plan is required and that disallowances will be made if it is not submitted within a reasonable period of time. This notification will indicate why the plan needs to be amended, request the State to review not only the sections of the plan that are in question but also the overall plan to identify any other changes that may be required, and specify a reasonable due date for submission of the amended plan. If the amended plan or an acceptable justification for an extension is not submitted by the due date, disallowances will be made in accordance with the procedures in 6-200-50.
(Aging Waiver A.R. 749, Doc. No. 16-10 at 44.) In essence, Pennsylvania argues that, pursuant to this provision, HHS was required to give it the opportunity to amend its PACAP to address any issues with it prior to issuing disallowance letters.
In response, Defendants maintain that the DAB correctly held that: (1) the manual does not bar disallowances but states that disallowances will be taken if required amendments are not submitted on a timely basis; (2) subregulatory guidance such as manual instructions cannot be read to override regulations authorizing disallowances; and (3) the manual provision relied on by Pennsylvania ultimately has no application to these appeals, as it applies only where DCA determined that a State failed to amend its cost allocation plan as required by 45 C.F.R. § 95.509, which did not happen here. (Doc. No. 28 at 26-28.)
After careful review of the briefs of the parties, the applicable law, and the administrative records, the Court is unpersuaded by Pennsylvania's arguments that the DAB's decisions were arbitrary or capricious because: (1) the manual provision was binding on HHS in this instance and required HHS to provide Pennsylvania the opportunity to amend its PACAP before taking disallowances; and (2) even it if was not binding on HHS, HHS was required (but failed) to explain why it did not follow the guidance of the manual provision here.
In its Aging Waiver decision, the DAB first noted that the cited manual provision does not preclude the disallowance of administrative costs claimed by a State without inclusion in its PACAP, but rather ultimately "warns states that failure to amend when required will result in disallowances." (DAB Aging Waiver Op., Doc. No. 16 at 26.) The DAB further stated that "[i]nstructions in a manual to take disallowances if a state does not timely amend a plan cannot be read to override regulations authorizing disallowances for failure to claim costs in accord with an approved cost allocation plan, especially since the *444 manual provisions do not have the force of law that applies to regulations." (Id. )[12]
Ultimately, the Court is unpersuaded that Pennsylvania has demonstrated that the DAB's position that the referenced manual provision is not applicable to these appeals was arbitrary or capricious. By its terms, the provision applies where DCA "determines that a State agency failed to amend its cost allocation plan as required by 45 C.F.R. 95.509...." (Aging Waiver A.R. 749, Doc. No. 16-10 at 44.) That regulatory provision instructs that States must "promptly amend" their PACAPs when specific events occur:
(1) [t]he procedures shown in the existing cost allocation plan become outdated because of organizational changes, changes in Federal law or regulations, or significant changes in program levels, affecting the validity of the approved cost allocation procedures. (2) [a] material defect is discovered in the cost allocation plan by the Director, DCA or the State. (3) [t]he State plan for public assistance programs is amended so as to affect the allocation of costs. (4) [o]ther changes occur which make the allocation basis or procedures in the approval cost allocation plan invalid.
45 C.F.R. § 95.509(a). Pennsylvania argues to this Court that the cost allocation issues identified as to its PACAP amounted to a "material defect" in the PACAP within the meaning of 45 C.F.R. § 95.509(a)(2), which triggered the potential application of the manual provision, maintaining that "[i]f the HHS cost allocation regulations required the kind of extensive detail on county-level costs in the PACAP that CMS and the DAB now say is required, then the omission of such detail can only be described as a 'material defect' within the meaning of 45 C.F.R. [§] 95.509(a)(2).... call[ing] into play the notice and opportunity to correct procedures found on page 94 of the Manual." (Doc. No. 30 at 7.) However, significantly, the DAB noted in its decision on the Aging Waiver appeal that neither party alleged that any of the events listed in 45 C.F.R. § 95.509 occurred here. (DAB
*445 Aging Waiver Op., Doc. No. 16 at 26.) Moreover, the DAB found that:
States are not obliged to claim all possible administrative costs, but are required to include all such costs they seek to claim in the PACAP with the required information about allocation methodology. Pennsylvania's failure to include the administrative costs at issue in its PACAP did not make the PACAP defective. Instead, the failure meant that Pennsylvania could not properly allocate the costs to Medicaid.
(Id. ) Further, in connection with its decision in the MATP appeal, the DAB found that "CMS has not argued, and the Board has not found, that Pennsylvania's PACAP is materially incomplete, but rather that the PACAP does not inform CAS or CMS of an intention or methodology to allocate county costs of running the MATP to Medicaid." (DAB MATP Op., Doc. No. 12-1 at 22 n.10.) Pennsylvania clearly would have preferred that HHS apply the manual provision in connection with the challenged MATP and Aging Waiver administrative costs to the extent that such application would have afforded it the opportunity to amend its PACAP prior to the issuance of disallowance letters. However, Pennsylvania has not demonstrated that the DAB's finding that the Best Practices Manual was inapplicable to the appeals at issue, and therefore, did not preclude the taking of disallowances here prior to offering Pennsylvania the opportunity to amend its PACAP, was arbitrary or capricious. The Court next addresses Pennsylvania's argument that the DAB decisions were arbitrary or capricious in concluding that costs of case management and transportation services provided directly to clients (but claimed as administrative costs) were subject to inclusion in the State's PACAP.
2. Disallowed Administrative Costs as Direct Services Costs
Pennsylvania argues that the DAB erred in concluding that the portion of the disallowed costs consisting of costs of case management and transportation services provided directly to clients were subject to inclusion in the State's PACAP because they were claimed as Medicaid administrative costs, because in Pennsylvania's view, both OMB Circular A-87 and 45 C.F.R. § 95.505 exclude "payments for goods and services provided directly to program recipients" from the scope of cost allocation procedures. (Doc. No. 20 at 26-29.)
In response, Defendants maintain that the DAB correctly found that as "Pennsylvania chose to characterize all the costs at issue as administrative in nature in its claims and did not treat them as direct services to individual recipients," (DAB MATP Op., Doc. No. 12-1 at 20), it "cannot now, having claimed the ... case management costs as administrative, assert that they are actually direct medical services to justify omitting them from its PACAP." (Id. at 17.) Defendants further maintain that Pennsylvania's argument on this point ignores the fact that there is some overlap between administrative and direct service costs, as some case management activities "may be claimed at either the administrative or the service match rate." (MATP A.R. 701, Doc. No. 12-9 at 90.)
After careful review of the briefs of the parties, the applicable law, and the administrative records, the Court is unpersuaded by Pennsylvania's argument that the DAB's decision on this point was arbitrary or capricious. CMS's State Medicaid Manual ("SMM")[13] instructs States that where *446 "an activity may qualify as either a Medicaid service or an administrative activity," the State is permitted to "classify the function in either category." (MATP A.R. 701, Doc. No. 12-9 at 90.)[14] However, the SMM also instructs that "[t]his decision must be made prior to claiming FFP because of the different rules which apply to each type of function under the Medicaid program." (Id. ) As Defendants point out, "[a]ccountability for case management provided as a direct medical service is maintained through the State Medicaid Plan," while "accountability for case management activities [claimed as administrative costs] is maintained by including the costs in 'a cost allocation plan approved by' CMS." (Doc. No. 28 at 30 (citation omitted).) As to case management costs claimed as administrative costs, the SMM instructs that such costs can only be claimed as administrative where "[d]ocumentation maintained in support of the claim is sufficiently detailed to permit [CMS][15] to determine whether the activities are necessary for the proper and efficient administration of the State plan...." (MATP A.R. 791, Doc. No. 12-9 at 91.)
The DAB held that Pennsylvania essentially "seeks to create a third category of Medicaid costs which may be claimed as administrative but which are nevertheless not ... administration costs for purposes of the requirement that such costs must be fairly allocable to Medicaid." (DAB MATP Op., Doc. No. 12-1 at 17). Here Pennsylvania admitted that it claimed the costs at issue as administrative costs. (Doc. No. 29 ¶ 6.) It further admitted that "none of the disallowed expenses were claimed as service costs." (Id. ¶¶ 18-19.) The Court is persuaded that, as the DAB held, whether the costs were in fact for services or administration, in light of Pennsylvania's decision to claim them as administrative costs, HHS's decision to disallow them was proper, because, as the DAB explained:
If the State's characterization [of the costs as administrative] was accurate, the expenditures are State agency costs which must be allocated in order to determine what share was necessary for the proper and efficient administration of Medicaid in Pennsylvania, a determination made through the PACAP approval process. If the State's characterization was inaccurate, ... we would uphold the disallowance of the claims because they should not have been claimed as administrative costs in the first place.
(DAB MATP Op., Doc. No. 12-1 at 20.) Pennsylvania has not demonstrated that the DAB's conclusion on this point was arbitrary or capricious. The Court next addresses Pennsylvania's arguments regarding record development before the DAB.
3. Record Development Before the DAB
In further challenge to the DAB's decisions, Pennsylvania asserts two arguments regarding DAB's development of the record upon which it based its decisions.
a. DAB Refusal to Develop Record on Issue of Potential Silent Change in Interpretation by HHS
First, Pennsylvania argues that the DAB erred in refusing to develop the *447 record on the issue of whether HHS changed its interpretation of the cost allocation regulations, maintaining that "[f]or more than two decades, DHS claimed the county-level costs of its Aging Waiver program and MATP, and CMS routinely reimbursed the State. DHS relied on and complied with the one paragraph statement required by 45 C.F.R. § 95.507(b)(6) in its PACAP, and CMS never objected. Now CMS and the DAB proclaim that procedure was improper and requires a disallowance." (Doc. No. 20 at 29.) Pennsylvania argues that a 2007 internal memorandum is "[t]he most compelling evidence of an unarticulated and unexplained change in interpretation" by HHS, (Doc. No. 30 at 12), and that it was an abuse of discretion for DAB to refuse its request to develop the record on this issue. (Doc. No. 20 at 32.)
The 2007 internal memorandum referenced by Pennsylvania relates to an April 2007 HHS OIG audit report pertaining to Medicaid county-level administrative case management costs, recommending that CMS "direct Pennsylvania to amend its cost allocation plan in order to claim the case management costs." (MATP A.R. 214, Doc. No. 12-4 at 14.) In its response to the audit report, CMS rejected the recommendation that Pennsylvania needed to submit a cost allocation plan amendment in order to claim the relevant costs, stating:
It is our understanding that the ACM costs are claimed under an agreement between the State and the Counties. The costs incurred by the Counties under the Medical Assistance program are identified, measured, and allocated in accordance with the County's cost allocation plan and reported to the Department of Public Welfare. DPW accumulates these costs for their inclusion in their quarterly claims for FFP under the Medical Assistance program. The State's claiming for these services is in accordance with 45 CFR 95.507(b)(6), 'costs that are claimed for services provided by a governmental agency outside the state agency will be supported by a written agreement that includes, at a minimum, (i) the specific services being purchased, (ii) the basis upon which the billing will be made by the provider agency (e.g. time reports, number of homes inspected, etc.), and (iii) a stipulation that the billing will be based on actual cost incurred.'
In addition, we [CMS] believe that it would be administratively burdensome to include cost allocation plans for all 67 counties in Pennsylvania as part of the Department of Public Welfare's (DPW) Cost Allocation Plan.
(MATP A.R. 249, Doc. No. 12-4 at 49.)
Based on this memorandum, Pennsylvania argues that the disallowances issued here due to a lack of information in the PACAP on county-level administrative costs reflect a silent and unlawful change in HHS policy, an issue upon which it sought record development from the DAB. Pennsylvania maintains that the Court should find the DAB's refusal to permit record development on this point an abuse of discretion and remand the case to the DAB with instructions to permit development of the record on the issue of whether an unlawful change in interpretation by HHS occurred. (Doc. No. 20 at 32.)
In response, Defendants argue that Pennsylvania's position that CMS changed its interpretation of the cost allocation regulations is irrelevant to the DAB's decision, and in any event, unsupported by the evidence. (Doc. No. 28 at 31.) Defendants maintain that CMS has consistently stated that administrative costs must be claimed in accordance with an approved PACAP that includes an allocation methodology, and that Pennsylvania has not denied that *448 its PACAP did not comply with this requirement. (Id. at 31-32.) Further, Defendants point out that the DAB noted that "CMS (and CAS) have long enforced the requirement to identify and disclose allocation methodologies for all administrative costs, as is evident from years of board jurisprudence." (DAB Aging Waiver Op., Doc. No. 16 at 28).
With specific regard to the 2007 internal memorandum relied on by Pennsylvania in support of its arguments, Defendants maintain that the Board properly rejected Pennsylvania's reliance on the memorandum, for the following reasons: (1) it involved a state Medicaid program unrelated to the Aging Waiver or MATP; (2) because the Board's decision did "not depend on whether Pennsylvania was required to include the county CAPs with the PACAP," the memorandum's statement that requiring submission of all the county CAPs with the PACAP would be "administratively burdensome" was irrelevant to the Board's decision; (3) the author of the memorandum was "not shown to have the authority to make policy;" and (4) the memorandum could not bind CMS or demonstrate any reliance by Pennsylvania as Pennsylvania located the memorandum more than eight years after its issuance and more than three years after the MATP costs were claimed. (Doc. No. 28 at 33-34.) Further, Defendants argue that even if Pennsylvania thought that, pursuant to 95 C.F.R. § 95.507(b)(6), it only needed to refer to its agreements with the counties in its PACAP, those agreements with the counties demonstrate that Pennsylvania knew that it assumed the responsibility to maintain documentation that supported allocation of the administrative expenses. (Id. at 36.)
Upon careful review of the DAB's decisions, the administrative records, and the briefs of the parties, the Court is unpersuaded by Pennsylvania's argument that the 2007 memorandum is prima facie evidence of a change in interpretation by HHS, such that the DAB abused its discretion in refusing record development on this issue prior to issuing its decisions upholding the disallowances. As the DAB stated, and as discussed supra, its conclusion that Pennsylvania failed to comply with the basic requirements of § 95.507(a) and § 95.507(b)(1)-(4) was one of its bases for upholding the disallowances, and that decision did not depend on "whether Pennsylvania was required to include the county CAPs with the PACAP," (DAB MATP Op., Doc. No. 12-1 at 24), an issue of potential relevance to the applicability of §§ 95.507(b)(6) and (b)(7), and whether they were met in this case. However, the DAB explicitly declined to resolve the issue of the applicability of §§ 95.507(b)(6) and (b)(7) here, making the memorandum irrelevant to the DAB's decisions. (DAB Aging Waiver Op., Doc. No. 16 at 21; DAB MATP Op., Doc. No. 12-1 at 11.)[16] Even assuming the potential relevance of the 2007 memorandum, as Defendants point out, if Pennsylvania thought that it only needed to refer to its agreements with the counties in its PACAP, those agreements demonstrate that Pennsylvania knew that it was responsible to maintain documentation supporting the allocation of administrative costs, and Pennsylvania has not produced any such documentation in connection with these appeals. (Doc. No. 28 at 36.) Accordingly, the Court finds that Pennsylvania has not demonstrated that the DAB's decisions to deny Pennsylvania's request for further record development on the issue of a potential silent *449 change in HHS policy regarding cost allocation requirements was an abuse of its discretion.[17]
b. Notice of Issues Before the DAB for Decision and Request for Record Development Regarding the Same
In connection with its arguments regarding the record upon which the DAB based its decisions, Pennsylvania also argues that it lacked notice that the county-level cost allocation methodology was before the DAB for decision. (Doc. No. 20 at 32-37.) Specifically, Pennsylvania claims that it sufficiently explained that local entities allocated their costs through their own local cost-allocation plans, and that nothing in the relevant disallowance letters indicated that Pennsylvania was required to produce that documentation. (Id. at 33.) In connection with the MATP appeal, Pennsylvania maintains that upon receipt of CMS's response brief in the MATP appeal challenging its failure to provide documentation, it requested a preliminary ruling from the DAB regarding whether it had to produce documentation on how the counties allocated their administrative costs and if so, how it could develop the record on that issue. (Id. at 34-35.) The DAB did not issue the requested preliminary ruling. (Id. at 35.) With regard to the Aging Waiver appeal, upon the issuance of the DAB's decision, Pennsylvania requested reconsideration of the decision, asserting that it lacked notice that it was being asked to produce documentation supporting the county-level claiming methodology. (Aging Waiver A.R. 329-34, Doc. No. 16-3 at 63-68.)
In response, Defendants maintain that the DAB correctly found that Pennsylvania had adequate notice that the issue of county-level cost allocation was before the DAB for decision pursuant to the relevant disallowance letters. (Doc. No. 28 at 37.) Further, Defendants maintain that, in connection with the Aging Waiver appeal, CMS's brief to the DAB framed the issues before the Board as "not whether the State provided sufficient detail, but the complete lack of any mention of the disallowed costs or any method of allocating them." (Id. at 38 (citations omitted).) Defendants note that the DAB concluded that CMS's brief "explicitly reminded [Pennsylvania] at a point when it could still remedy the situation" that "claiming for any costs that benefit multiple programs must be supported by an allocation methodology and that the State had failed to identify such a methodology in or out of its PACAP as to the disallowed costs." (Id. (citing DAB Aging Waiver Op., Doc. No. 16 at 36-37).) In connection with the MATP appeal, Defendants note that the DAB found that even if the disallowance letter was insufficient to provide notice, "we would find that Pennsylvania had adequate notice in the *450 proceedings in this appeal. CMS's response brief clearly identified the issue, and Pennsylvania had the opportunity to respond in its reply brief." (Id. at 39 (citing DAB MATP Op., Doc. No. 12-1 at 12).)
Upon review of the DAB's decisions, the administrative records, and the briefs of the parties, the Court is unpersuaded by Pennsylvania's argument that it lacked notice that the county-level cost allocation methodology was before the DAB for decision. As to the Aging Waiver appeal, in its decision denying Pennsylvania's request for reconsideration on this point, the DAB found that Pennsylvania should have known of its responsibility to disclose an allocation methodology, quoting the disallowance letter's explanation that administrative costs may only be claimed when "directly related to the administration of the Medicaid program," included in an approved PACAP, and " 'supported by a system which has the capability to isolate the costs which are directly related to the support of the Medicaid program from all other costs incurred by the agency.' " (Aging Waiver A.R. 28, Doc. No. 16 at 35 (citations omitted).) The Court finds that the DAB's conclusion that Pennsylvania had notice that the county-level cost allocation methodology was an issue in these proceedings was not arbitrary or capricious. The Court's conclusion is supported by the DAB's finding that CMS in its brief reiterated Pennsylvania's failure to disclose the allocation methodology, stating that if Pennsylvania knew " 'how the disallowed costs were allocated, it ha[d] not provided the information in its appeal file.' " (Aging Waiver A.R. 29, Doc. No. 16 at 36 (citation omitted).)
In connection with the MATP appeal, the relevant disallowance letter stated that Pennsylvania failed to claim the relevant administrative costs in accordance with an approved PACAP meeting regulatory requirements. (MATP A.R. 28, Doc. No. 12-1 at 28.) The DAB held that "[e]ven if we considered the disallowance insufficient in itself to make clear that Pennsylvania needed to" identify its methodology for allocating county-level administrative costs, "we would find that Pennsylvania had adequate notice in the proceedings in this appeal. CMS's response brief clearly identified the issue, and Pennsylvania had the opportunity to respond in its reply brief." (DAB MATP Op., Doc. No. 12-1 at 12.) The Court finds that DAB's conclusion on this point was not arbitrary or capricious.
Ultimately, Pennsylvania has not demonstrated that: (1) the DAB's conclusion in these appeals that Pennsylvania had notice that it was required to explain how county-level administrative costs were allocated, yet "failed to establish that any methodology at all was developed and implemented ... to allocate which costs incurred by the counties should be charged to Medicaid," (DAB MATP Op., Doc. No. 12-1 at 14), and (2) the DAB's denial of Pennsylvania's requests for additional record development on this issue, were arbitrary, capricious, or an abuse of discretion.
IV. CONCLUSION
For the foregoing reasons, the Court finds that Pennsylvania's challenges to the DAB's decisions fail. Pennsylvania has not demonstrated that the decisions of the DAB as to the MATP and Aging Waiver appeals were arbitrary or capricious, or otherwise not in accordance with law. Accordingly, the Court will grant summary judgment in favor of Defendants and affirm the decisions of the DAB.

The DAB came to a similar conclusion in the MATP appeal. (See DAB MATP Op., Doc. No. 12-1 at 11.)

As the Court view this argument to be part of Pennsylvania's second-level challenges to the DAB's decisions based on record development, the Court addresses this argument infra after reviewing Pennsylvania's merits-based challenges.

As noted by Defendants, DCA has since changed its name to Cost Allocation Services (CAS), which, as noted above, is the centralized unit within HHS charged with reviewing State's PACAPs. See 45 C.F.R. § 95.507(a)(4).

Assuming the potential relevance of the manual provision to this dispute, the Court finds the authority relied on by Pennsylvania to support its position as to the binding nature of such language unavailing. Pennsylvania cites to United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), which held that agencies must comply with their own regulations, but the case does not address compliance with subregulatory guidance such as the Best Practices Manual. Pennsylvania relies on two additional cases - Padula v. Webster, 822 F.2d 97, 100 (D.C. Cir. 1987) and Chiron Corp. & PerSeptive Biosystems v. National Transp. Safety Board, 198 F.3d 935, 943-44 (D.C. Cir. 1999) - which similarly do not provide the support that Pennsylvania seeks for its position, as in both cases, the courts held that the sub-regulatory guidance at issue was not binding on the government because the government did not intend it to be so. See Padula, 822 F.2d at 100 (holding that "an agency pronouncement is transformed into a binding norm if so intended by the agency"). The DCA (now CAS) Best Practices Manual contains no expression of intention to bind DCA, providing that it "was developed to assist the Division of Cost Allocation (DCA) staff in their review of public assistance (PA) cost allocation plans and plan amendments.... and presents DCA best practices that should be followed during the review." (Doc. No. 16-8 at 64.) Further, the manual provides that "sound judgment must be exercised in adapting the steps of the manual to each negotiation." (Id. at 66.) Pennsylvania's citation to Farrell v. Department of Interior, 314 F.3d 584 (Fed. Cir. 2002) likewise fails to support its position that the manual language is binding. In that case, the court, in addressing the binding nature of an agency "Guide," found that the Guide's statement (similar to the one contained in the manual here) that it served to provide "a general framework within which supervisors may exercise sound judgment in dealing with particular circumstances," supported its conclusion that the "Guide" was not binding on the agency. Id. at 592.

The State Medicaid Manual "serves as the official HHS interpretation" of the Medicaid law and regulations. Pennsylvania Dept. of Public Welfare v. U.S. Dept. of Health and Human Servs., 647 F.3d 506, 509 (3d Cir. 2011). It is available at https://www.cms.gov/Regulations-and-Guidance/guidance/Manuals/Paper-Based-Manuals-Items/CMS02197.html.

The DAB noted that Pennsylvania is well aware of this fact because, with regard to the MATP, "it chose to claim Philadelphia County's transportation program costs as medical service expenditures and those of the other 66 counties as administrative expenses." (DAB MATP Op., Doc. No. 12-1 at 16.)

CMS was previously known as the Health Care Financing Administration ("HCFA").

In fact, Pennsylvania acknowledges that any issues regarding § 95.507(b)(6), while extensively briefed before the DAB, were not a basis for its decision, and therefore, are "not before the Court." (Doc. No. 30 at 15.)

In its reply brief, Pennsylvania first points out, in apparent response to Defendants' brief, that whether it met its burden of proof to show an illegal change in interpretation before the DAB is "not the issue before the Court. Instead, the Court must decide whether the State proffered enough evidence of a silent and unexplained change in course to make the DAB's failure to conduct record development on the issue arbitrary, capricious, and an abuse of discretion." (Doc. No. 30 at 12.) However, later in the same brief, Pennsylvania argues that DAB's "conclusion in both disallowance decisions that there was no silent change in policy by the agency runs counter to the evidence before the agency," and proceeds to list the evidence it believes is contrary to that conclusion. (Id. at 29-30.) The Court assumes that, consistent with its earlier position, and its overall framing of the issues before the Court, Pennsylvania's argument remains that the DAB's failure to permit record development on the issue of whether a silent change in policy occurred was an abuse of discretion in light of the evidence presented to it, and the Court has addressed the issue accordingly.